**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Severiano Olivarez GONZALEZ,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Vincente CARRERRA, a/k/a Severiano
Olivares, Defendant-Appellant.**

**Nos. 75–1358 and 76–1197.**

United States Court of Appeals,
Fifth Circuit.

March 18, 1977.

Bertrand C. Moser (Court-appointed), Houston, Tex., for defendants-appellants.

Edward B. McDonough, Jr., James R. Gough, Jr., Anna E. Stool, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., for U. S. in 75–1358.

Michael P. Carnes, U. S. Atty., Judith A. Shepherd, James A. Rolfe, Asst. U. S. Attys., Dallas, Tex., for U. S. in 76–1197.

Before GOLDBERG, SIMPSON and FAY, Circuit Judges.

FAY, Circuit Judge:

## THE CASES

The appellant, Severiano Olivarez Gonzalez, also known as Vincente Cesar Carrerra, also known as "Chente" Carrerra, was charged along with Jose Lopez Garcia in a three-count indictment in the Southern District of Texas. The charges included (1) conspiracy to possess with the intent to distribute heroin;[1] (2)possessing with intent to distribute heroin;[2] and (3) distributing heroin.[3] The overt acts supporting the conspiracy, the possession, and distribution allegedly occurred on May 29, 1974. After a trial by jury in Laredo, Texas, the Government dismissed Count I,[4] the appellant, Gonzalez, was found guilty on Count II and acquitted on Count III, and Garcia was found guilty on Counts II and III. The appellant was sentenced on Count II to serve a term of imprisonment of five years followed by a special parole term of three years. Gonzalez' appeal from the Laredo conviction forms the basis of Case 75–1358, and the issues raised herein differ from those raised in a separate appeal by Garcia.

---

1. 21 U.S.C. §§ 841(a)(1) and 846.

2. 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a).

3. 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a).

4. Although the dismissal of Count I was noted on the docket after the jury trial and included

in the final judgment that followed the sentencing, the records indicate that the defendant was not arraigned on Count I and never pled to it, which comports with the Government's assertion that counsel and the trial court understood in advance of the trial that Count I would be dismissed.

See *United States v. Garcia*, 526 F.2d 958 (5th Cir. 1976).

In a different indictment, returned by a grand jury of the Northern District of Texas, appellant was charged under the name Vincente Carrera, along with Garcia and others, with conspiracy to distribute and to possess with intent to distribute heroin.[5] Following a later trial by jury on this indictment in Dallas, Texas, appellant was found guilty and sentenced to a ten-year term of imprisonment to run consecutively to the sentence imposed in Laredo, plus a three year special parole term. The appeal from the Dallas conviction [6] forms the basis of Case 76–1197, and will be considered in conjunction with the Laredo appeal due to the interrelated issues involved.

## THE FACTS

The nature of the assigned errors makes it necessary to understand the basic facts underlying the indictments. The conspiracy charged in the Dallas indictment concerned a variety of drug activities between January and June of 1974. There is no indication, however, that appellant was in any way connected with any of these activities or the co-indictees prior to May 29 of that year. Gonzalo Marquez, a government informant and one of the two principle government witnesses, had arranged to meet Garcia on May 29 at the Woolco parking lot in Laredo for the purpose of buying one pound of heroin from Garcia. On the morning of May 29, Marquez and Drug Enforcement Agency (DEA) Agent Gilberto Alvarez drove from Dallas to Laredo, followed in another automobile by two other DEA agents. Marquez and Alvarez arrived at the designated meeting place about 6:00 p. m. and about fifteen minutes later Garcia arrived in a pick-up truck being driven by

appellant. Agent Alvarez testified that Marquez and Garcia exited their respective vehicles and met between the two vehicles and that appellant then joined them, being introduced by Garcia to Marquez as "Chente". According to Alvarez, Garcia and Marquez discussed the details of a one pound transfer of heroin which was to occur later that evening and a future delivery of additional heroin. Garcia stated the one pound was ready for delivery and that he had brought a sample. Appellant then reached into the pick-up truck through a window and produced a small packet which he handed to Garcia who in turn handed it to Marquez. Everyone left the scene. Alvarez further testified that after field testing the substance Marquez telephoned Garcia who said that "Chente" (appellant) would obtain the drugs and that they would meet at the parking lot at 8:00 p. m. that night to complete the transaction. Alvarez and Marquez returned to the rendezvous point at the scheduled time. About ten minutes later, Garcia arrived on a motorcycle driven by Gonzalez. Garcia got off the motorcycle and directed Gonzalez to drive away a short distance and act as a lookout. Gonzalez left, and Garcia then reached into his pants and produced a package containing one pound of heroin, which he handed to Alvarez. Garcia then motioned to appellant who came back and picked him up.

During the next few days, Marquez and Garcia had several phone conversations concerning the purchase of the additional heroin. On June 4, 1974, Marquez and Garcia arranged to meet in the same parking lot after appellant obtained the drugs. About 4:00 p. m. that afternoon, Marquez went to the meeting and saw Garcia arrive in an automobile driven by appellant. Only having one of three kilos promised, appellant told Marquez that he was making arrange-

---

**5.** The conspiracy count was one of three counts included in the indictment. Gonzalez was named in two of the 16 overt acts:

 "13. On or about May 29, 1974, GILBERTO ALVAREZ, GONZALO MARQUEZ, JOE GARCIA and VINCENTE CARRERRA met in Laredo, Texas . . . .
 16. On or about June 4, 1974, GONZALO MARQUEZ, JOE GARCIA and VINCENTE

CARRERRA met in Laredo, Texas . . ."

**6.** On appeal, this Court affirmed the convictions of Garcia and Guillermo Sandoval, but reversed the conviction of Mario Sandoval. *United States v. Garcia et al.*, 528 F.2d 580 (5th Cir. 1976). See note 15 *infra*.

ments to bring the remainder to Dallas. Garcia delivered one package of heroin to Marquez and then he and Marquez drove to Dallas in Marquez's automobile. Several times during the journey they stopped and Garcia called appellant because, according to Garcia, appellant was securing the remaining drugs and delivering them to Dallas. In the last call, appellant supposedly told Garcia to bring the money back to Laredo and the two kilos would be transferred there. Garcia was arrested after the men arrived in Dallas. DEA agents arrested appellant at his home in Laredo on the evening of June 5.

At the Laredo trial, Garcia and appellant took the stand in their own behalf. Their testimony varied from that of Alvarez about the first Woolco meeting at 6:00 p. m. Appellant testified that at the 6:00 p. m. meeting, neither he nor Garcia got out of the pick-up and denied that he had reached into the pick-up or had ever handed a package to Garcia. Appellant also said that he gave Garcia two rides as a favor to a neighbor, but that he did not know Garcia was in possession of narcotics or that the meetings in the parking lot had anything to do with drugs.

Garcia, whose defense was entrapment, corroborated appellant's testimony. Garcia admitted that at the 6:00 p. m. meeting, he delivered a sample of heroin to Marquez, but denied that appellant had handed it to him. Garcia also testified that he never told appellant that he had heroin in his possession or that the purpose of the trips to Woolco was connected with narcotics traffic.

The testimony of appellant was in part corroborated by Lance T. Wade, a government witness. Wade was a DEA agent who had the 6:00 p. m. Woolco meeting under surveillance. Wade, contrary to the testimony of Alvarez, testified that at the 6:00 p. m. meeting, Gonzalez and Garcia never got out of the pick-up truck.

There is also conflicting testimony as to the events that followed appellant's arrest. DEA Agent Laurel stated that after the arrest and again later that evening in the DEA office he read appellant in Spanish the full panoply of *Miranda* rights and that appellant, in response to Laurel's interrogation, incriminated himself by admitting that when he transported Garcia to the Woolco parking lot on the motorcycle at 8:00 p. m. (May 29) he knew Garcia was illegally in possession of narcotics. On the other hand, appellant denied that he had ever been advised of any of his constitutional rights, denied saying that he was aware that Garcia possessed narcotics on their trips to Woolco a few days before, and that he had requested but was denied permission to call his attorney.

## CONFESSION HEARING

The issue presented by the appeal from the Laredo indictment and trial is whether the trial court erred by not conducting a hearing out of the jury's presence to determine the admissibility of appellant's incriminating statements, pursuant to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

When the government counsel first sought to elicit from Agent Laurel the statements appellant made while in custody on June 5, appellant's attorney objected as follows:

"I am going to object to any testimony this witness may give on the grounds that the defendant was not taken before a magistrate immediately upon being arrested, and that any admissions he might have made would be inadmissible."

Appellant concedes that the objection does not by itself clearly indicate that he was complaining that Agent Laurel failed to comply with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but submits that the court's response indicates that this was its interpretation of the objection. The court had replied: "I think if he was thoroughly warned, it would be admissible. You may go forward." Appellant's attorney did not contest the court's interpretation of his prior objection and both sides proceeded to question Agent Laurel and appellant about the warnings. At the conclusion of the trial, the court

gave a lengthy jury instruction on the *Miranda* question without objection from counsel.[7] Thus, appellant argues, the trial court and counsel were apparently aware that appellant had interposed a *Miranda* objection to the confession, and thus the court's failure to conduct a hearing, without the jury present, to determine the agent's compliance with *Miranda* and the appellant's waiver of his constitutional rights violated the Supreme Court's mandate in *Jackson v. Denno, supra*, and *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). Based on the lack of any such hearing, appellant believes he is entitled to a new trial on the confession issue regardless of the strength of the other evidence against him, which he contends is minimal and weak in light of the highly prejudicial effect of the alleged confession.[8]

■ *Jackson v. Denno* entitles defendants to a hearing "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." 378 U.S. at 391, 84 S.Ct. at 1788, 12 L.Ed.2d at 924. The court's conclusion that the confession is voluntary must appear from the record with unmistakable clarity. *Sims, supra*, 385 U.S. at 544, 87 S.Ct. at 643, 17 L.Ed.2d 598. Although *Jackson v. Denno* concerned the voluntariness of a confession in the sense of it not being given against the defendant's free will, this Court in *Turner v. United States*, 387 F.2d 333 (5th Cir. 1968), confronted the need for a *Jackson* hearing when the challenge to the validity of the confession was based on the absence of *Miranda* warnings. Viewing objections to confessions based on physical or mental coercion as being no different than objections based on the failure to give *Miranda* warnings, this Court held that *Jack-*

7. "On the other hand, if you are convinced beyond a reasonable doubt that he did in fact know there was narcotics involved, that he was carrying narcotics, then you would be warranted in convicting on each count—with this qualification, you will remember there was testimony from Mr. Laurel, I believe it was, the arresting agent. He told us that at the time he made the arrest of this defendant, he and several other officers went to his house, that the man came out without a shirt on and he went in the house and got a shirt, and that at the time of the arrest he read the man his constitutional rights from a little card that the officer carried with him. He told us he read it to him in Spanish, and the English translation was read to us here in English. It was essentially this: That you are advised that you have constitutional rights as follows, you don't have to make any statement, you are entitled to have a lawyer with you if you want him, if you can't employ a lawyer you are entitled to have one appointed to represent you without charge, and various things of that sort. The defendant denied having any—let me back up. I believe Mr. Laurel's testimony told us that when they got to the office some thirty minutes or an hour later and started to ask the defendant questions, and take a history sheet, I believe they call it, date of birth and residence and that sort of thing, that he warned him again and gave him a warning the second time.

The defendant has denied that that took place. He has denied that he was warned. In the course of his testimony, Mr. Laurel told us that in talking to the defendant Gonzalez, he, Gonzalez, admitted that he knew that his friend Garcia was carrying the narcotics when he took him back to the parking lot.

I instruct you that a defendant who is under arrest, as Gonzalez was at the relevant time, is entitled as a matter of law to be warned of his constitutional rights. If he is not given that warning, any admission that he may make, any incriminating statement, such as I knew my friend Garcia had the narcotics in his possession, is not admissible against him. Hence, in considering the testimony, if you are convinced beyond a reasonable doubt that in fact he was warned, as Mr. Laurel has told us, once is enough, you don't need to do it twice, but if he was read the little card which was read to us here in evidence, and was warned of his rights, you may consider his admission, if you believe Laurel's testimony that the defendant did make such an admission that he, Gonzalez, knew that Garcia was carrying narcotics when he took him to the parking lot.

On the other hand, if you have a reasonable doubt as to whether or not in fact he received such a warning, you would not consider that admission for any purpose."

8. Appellant argues that the jury's acquitting him on Count III (distribution or aiding and abetting distribution by another person) leads to the conclusion that the jury did not believe Agent Alvarez' testimony, leaving as evidence only the confession and the fact that appellant drove Garcia to the two meetings on May 29.

son v. Denno and *Sims v. Georgia, supra,* required that the district court conduct a hearing out of the jury's presence, independently determining compliance with *Miranda,* before a confession may be introduced to the jury. 387 F.2d 333, 334. This requirement is also expressed in Title 18, U.S.C. § 3501.

 The trial court, however, is under no obligation to conduct a *Jackson v. Denno* hearing when there is no issue of voluntariness of a confession properly before it. In the instant case, the record reveals that appellant did not file a motion to suppress the confession prior to trial; he did not clearly object either before or during the trial to Agent Laurel's testimony as containing statements that were coerced, involuntary, or made in defiance of *Miranda* ; he never requested the court to conduct a voluntariness hearing without the jury present; evidence raised on appellant's behalf did not squarely raise the issue of the voluntariness of his confession; and appellant did not raise the voluntariness issue either at the close of the government's case when he joined in his co-defendant's motion for judgment of acquittal or at the close of all the evidence prior to the submission of the case to the jury. The objection raised by appellant's trial counsel was a *McNabb-Mallory* [9] type objection, and was not sufficiently clear to put the trial court on notice that a *Jackson v. Denno* hearing was needed.[10] The appellant waived his right to such a hearing and is precluded from now raising its absence as error because he failed to properly challenge in the trial court the confession offered in Agent Laurel's testimony. *United States v. Yamashita,* 527 F.2d 954 (9th Cir. 1975); *United States v. Moffett,* 522 F.2d 1379 (5th Cir. 1975); [11] *United States v. Goodson,* 502 F.2d 1303 (5th Cir. 1974); *Puryear v. United States,* 378 F.2d 29 (5th Cir. 1967). Accord, *United States v. Sabin,* 526 F.2d 857 (5th Cir. 1976), where this court held that the trial court was not required to hold a voluntariness hearing when the issue of voluntariness was not an issue at trial but first raised on appeal and when the unsolicited statements made by the defendant were not within *Miranda's* protection.[12]

Furthermore, there does seem something inconsistent about appellant complaining he was never given a hearing on the issue of *Miranda* warnings or voluntariness of his confession in light of his testimony that he never made a confession!

9. *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), make inadmissible confessions obtained after defendant was detained for an unreasonable length of time without being brought before a magistrate or judicial officer, as required by law. In the instant case, there is no inference of any overbearing; the appellant confessed within two hours after the arrest and was brought before a magistrate the morning following his arrest.

10. The objection may have been inspired by a peculiar Texas procedure whereby a defendant must be taken before a magistrate who then gives him what in effect is *Miranda* warnings. Art. 15.17 and Art. 14.06, Texas Code of Crim. Procedure. The Texas procedure further requires that any confession be in writing. Art. 38.22, Texas Code of Crim.Procedure. Government counsel suggest that attorneys often urge this Texas practice on federal courts and that the district court judge may have thought it was the reason behind the objection.

11. When discussing the requirements of Title 18, U.S.C. § 3501, the Court in *Moffett* stated:

Appellants' counsel did make a pre-trial motion to suppress their oral statements, and renewed this motion several times during the trial, but a careful reading of the record reveals that the basis of these objections was as to the timeliness of the *Miranda* warnings given appellants by the Border Patrol agents who effected the stop and search. Consequently no issue of voluntariness was raised, either before or during the trial which would have required the trial court to hold a § 3501 hearing outside the jury's presence. 522 F.2d 1379, 1380–81.

12. *Smith v. Estelle,* 527 F.2d 430 (5th Cir. 1976), n. 3, states: "A *Jackson v. Denno* hearing is of course constitutionally mandated for a defendant who *timely urges* that his confession is inadmissible because not voluntarily given. [citation omitted]." 527 F.2d 430, 431. (emphasis added)

## COLLATERAL ESTOPPEL

The second ground raised in these appeals is that the doctrine of collateral estoppel should have barred testimony in the Dallas trial that on May 29, 1974, the appellant handed a sample of heroin to Garcia, which testimony appellant contends was fatally damaging. Prior to the Dallas trial, appellant filed a motion to prevent any testimony from Government witnesses about appellant's activities on May 29 as described in Overt Act No. 13 of the indictment.[13] The basis of the motion, which the district court denied, was that the defendant-appellant had already been tried in Laredo for the offenses that occurred on May 29, and that to try him again in Dallas on these same overt acts would expose him to double jeopardy.

■ One of the leading cases on the subject, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), explains collateral estoppel· as meaning "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d 475. The protection of collateral estoppel is an established rule of federal criminal law, *id.,* and extends to prevent redetermination of evidentiary facts as well as ultimate facts, *Blackburn v. Cross,* 510 F.2d 1014 (5th Cir. 1975); *Wingate v. Wainwright,* 464 F.2d 209, 213–14 (5th Cir. 1972); *Yawn v. United States,* 244 F.2d 235 (5th Cir. 1957). When collateral estoppel is raised by a defendant, the task then becomes to decipher exactly what facts have been or should be deemed to have been determined at the first trial. *Adams v. United States,* 287 F.2d 701, 703 (5th Cir. 1961).

According to *Ashe, supra,* after a defendant has been acquitted in one trial, the doctrine requires the court in a subsequent trial to examine the pleadings, evidence, jury charge and other relevant material in the record of the first trial to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." [footnote and citations omitted]. 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 476. *Adams v. United States, supra,* restated the proposition to the effect that when a "fact is not *necessarily* determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue." 287 F.2d 701, 705. See also *Johnson v. Estelle,* 506 F.2d 347, 350 (5th Cir. 1975); *McDonald v. Wainwright,* 493 F.2d 204 (5th Cir. 1974).

■ Focusing on the facts of the instant case, appellant argues that the jury's convicting him on Count 2 (possession with intent to distribute) and acquitting him on Count 3 (distribution), particularly in light of the indictment charging and the court instructing that aiding and abetting would be sufficient to convict, can lead to only one logical explanation. That is, the Laredo jury did not believe Agent Alvarez' testimony that at the six o'clock meeting Garcia and appellant got out of the pick-up and that appellant thereafter reached into the truck and produced the heroin sample which he handed to Garcia. Appellant submits that, to reach the result it did, the Laredo jury must have believed that appellant knew that Garcia had heroin in his possession intending to distribute it and must have disbelieved the testimony that appellant handed heroin to Garcia, indicating that the latter issue of fact was resolved once and barred from being litigated again.[14]

---

13. See footnote 5 *supra.*

14. Appellant submits that eliminating the testimony of Alvarez and Marquez about appellant's handing the heroin to Garcia at the six o'clock meeting substantially reduces the Government's showing of appellant's involvement in the conspiracy, leaving only (1) appellant's presence with Garcia on May 29 at the 6:00 and 8:00 meetings at Woolco; (2) appellant's presence with Garcia on June 4; (3) Marquez' double hearsay testimony about appellant's activities which Marquez gleaned from telephone conversations with Garcia; and (4) Marquez' uncorroborated account of a conversation he had with appellant on June 4.

The Government offers a different view of the Laredo jury's verdict. It suggests that the conviction on Count II necessarily implies the jury's belief that appellant had guilty knowledge and criminal intent at the time of that 8 o'clock meeting, which means that they must have believed Alvarez, at least in part, because he was the only eyewitness whose testimony clearly inculpated appellant. The Government submits that, in ascertaining appellant's guilt, it was not essential for the Laredo jury to make any determination of fact regarding the first meeting, since the indictment did not mention that meeting, the testimony about that meeting was used only to show intent and knowledge, and the jury could have found the requisite intent if they merely believed Alvarez' testimony that appellant was assigned to maintain a "look out" at the later meeting. Alternatively, the Laredo verdicts may have been the result of sympathy or an incorrect understanding of the law.

This Court finds that the doctrine of collateral estoppel is not applicable to the facts of this case. Although the conspiracy charged in the Dallas indictment includes some of the same activities as involved in the Laredo indictment, there are simply too many alternatives for the Laredo jury's not guilty verdict on Count III. It does not necessarily mean that the jury disbelieved Agent Alvarez' testimony that the appellant reached into the pick-up and took out a package and handed it to Garcia. One possibility is that the jury believed the testimony but did not believe that appellant was "distributing". The jury may have reasoned he was simply mechanically assisting the owner of the heroin in distributing it, or the jury may have concluded that one in joint possession cannot be guilty of distributing to another in joint possession (and there may well be some legal basis to this theory). There are many possible reasons for the jury's verdict and without extrasensory perception, we cannot say that any one is necessarily inherent in the verdict. Under the circumstances of this case, the Government was not collaterally estopped from prosecuting the appellant on the Dallas indictment nor from introducing Agent Alvarez' testimony about the handling of the drug. Moreover, there is ample evidence in the record to sustain the appellant's convictions.

## INFORMER–CREDIBILITY INSTRUCTION

■ Appellant further contends that, if he prevails on the collateral estoppel issue and the contested evidence is disregarded, the informant's (Marquez) testimony lacked corroboration, in view of which, the district court's failure to give a special instruction on informant testimony was plain error. Although it is not necessary for the Court to consider this issue in light of our conclusion on collateral estoppel, we do note that no special instruction was ever requested. The trial judge has an obligation to give proper instructions, but the primary responsibility to request such instructions remains with counsel. If no instruction is requested by counsel, a conviction will be reversed only if the reviewing court finds plain error. See *United States v. Garcia*, 528 F.2d 580 (5th Cir. 1976),[15] and cases cited therein. If we were considering this issue, we would not find plain error here.

The convictions in both cases are affirmed.

---

15. *United States v. Garcia* is the appeal from the convictions of this appellant's Dallas co-defendants. This Court reversed with respect to Mario Sandoval even though no instruction was requested due to the Court finding plain error in the exceptional circumstances of that case. The informant's testimony regarding Mario was totally uncorroborated by any other witness and was contradicted by the testimony of Mario, himself, and by the only two witnesses present when the events testified about occurred; the informer received an extraordinarily high stipend for his assistance; and other circumstances combined "to cast a dark shadow on the credibility of this witness [the informer]." 528 F.2d 580, 588.

The convictions of the other appellants in that case, Guillermo Sandoval and Jose Garcia, were affirmed since the informer's testimony about them was corroborated by other witnesses. *Id.*