UNITED STATES of America

v.

Charles D. GRIGGS.

No. 79–138(S)–Cr–J–M.

United States District Court,
M. D. Florida,
Jacksonville Division.

July 18, 1980.

Gary L. Betz, U. S. Atty. by Thomas E. Morris, Asst. U. S. Atty., Jacksonville, Fla., for the Government.

Archibald J. Thomas, III, Asst. Federal Public Defender, Jacksonville, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

MELTON, District Judge.

Defendant Charles D. Griggs is charged in the instant five–count indictment with various offenses relating to counterfeit money. Count I of the indictment alleges that the defendant conspired with others to pass counterfeit $50 Federal Reserve notes [1]; Counts II and III allege that he sold and delivered counterfeit $50 Federal Reserve notes to Frederick Allen Kirschwing on two separate occasions [2]; Count IV alleges that he unlawfully possessed counterfeit money in various denominations [3]; and Count V alleges that he attempted to pass a counterfeit $50 bill at the Page One Lounge in Jacksonville, Florida.[4]

The cause is presently before the Court on the defendant's motion to dismiss the indictment on grounds that the prosecution is barred by the Fifth Amendment's guarantee against double jeopardy. Specifically, the defendant asserts that the government is collaterally estopped from relitigating a fact essential to its present case as that same fact was previously determined in his favor by virtue of his acquittal of

counterfeiting charges in a prior criminal action.[5]

The defendant was tried before this Court in June, 1979, on a three–count indictment charging that he passed and uttered counterfeit $50 Federal Reserve notes of the United States with intent to defraud. Count I of that indictment alleged that on April 20, 1979, the defendant passed five counterfeit $50 bills to employees of the 12 North Restaurant at Jacksonville Beach, Florida. Count II alleged that on that same date Griggs passed a counterfeit $50 bill to Susan Monson, an employee of the Page One Lounge in Jacksonville, Florida. Count III of the indictment alleged that he passed another counterfeit $50 bill to Barbara Rhodes, also an employee of the Page One Lounge, on April 20, 1979. The Court granted the defendant's motion for directed verdict of acquittal as to Count III of the indictment, finding that the government had failed to produce sufficient evidence that the defendant was the person who passed the counterfeit $50 bill in question. The jury subsequently returned a verdict of not guilty as to Counts I and II. Thereafter, on November 28, 1979, the instant indictment was filed charging the offenses previously set forth. It is undisputed that the second indictment arose out of the same set of operative facts upon which the first indictment was based.

The defendant contends that because the jury acquitted him on Counts I and II of the first indictment, the jury must have determined that he was unaware that the bills were counterfeit.[6] The jury must have made this determination, the defendant argues, because the principal defense he presented at trial was lack of such knowledge. According to the defendant, the government must prove in the second trial,

1. 18 U.S.C. § 371 (1976).

2. 18 U.S.C. § 472 (1976).

3. *Id.*

4. *Id.*

5. *United States v. Griggs*, No. 79–49(S)–Cr–J–M (M.D.Fla., indictment filed May 31, 1979).

6. The Court notes that for purposes of applying collateral estoppel, it makes no difference if the trial judge, rather than the jury, acquits the defendant. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *accord United States v. Mock*, 604 F.2d 341, 343 n.2 (5th Cir. 1979).

the same fact which was decided in his favor at the earlier trial, that is, that he knew the bills were counterfeit. Therefore, the defendant insists that the prior jury verdict operates to collaterally estop the government from relitigating that fact.

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court held that the doctrine of collateral estoppel was embodied in the Fifth Amendment's guarantee against double jeopardy. The Court explained collateral estoppel in the following manner: ". . . when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194. Within this circuit, the doctrine extends to prevent redetermination of evidentiary facts as well as ultimate facts. *United States v. Gonzalez*, 548 F.2d 1185 (5th Cir. 1977); *Blackburn v. Cross*, 510 F.2d 1014 (5th Cir. 1975); *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972); *Yawn v. United States*, 244 F.2d 235 (5th Cir. 1957). When collateral estoppel is raised by a defendant, the trial court must decipher what facts or issues have been or should be deemed to have been determined at the first trial. *United States v. Gonzalez, supra*, at 1191; *Adams v. United States*, 287 F.2d 701, 703 (5th Cir. 1961).

According to *Ashe v. Swenson*, when a defendant is acquitted in one trial and then seeks to foreclose a second prosecution by asserting the doctrine of collateral estoppel, the court presiding over the second trial must examine the pleadings, evidence, jury charge, and other relevant material in the record of the first trial to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." [footnote and citations omitted] 397 U.S. at 444, 90 S.Ct. at 1194. *See also United States v. Larkin*, 605 F.2d 1360 (5th Cir. 1979), *modi-*

*fied*, 611 F.2d 585 (5th Cir. 1980). The Fifth Circuit Court of Appeals in restating this proposition concluded that when a "fact is not *necessarily* determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue". *Adams v. United States, supra*, at 705. *See also United States v. Ballard*, 586 F.2d 1060, 1064 (5th Cir. 1978); *United States v. Gonzalez, supra* at 1191; *Johnson v. Estelle*, 506 F.2d 347, 350 (5th Cir.), *cert. denied* 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975); *McDonald v. Wainwright*, 493 F.2d 204 (5th Cir. 1974).

It is clear to the Court from a review of the record and pleadings of the prior case that, with respect to the first four counts of this indictment, the doctrine of collateral estoppel is wholly inapposite. These counts allege crimes which are distinctly different in nature from the passing and uttering charges of which the defendant was acquitted. Additionally, these acts are alleged to have occurred on different dates and at different places than those charged in the previous indictment. Therefore, the Court does not agree with the defendant that the issue of his knowledge as to the genuineness of the $50 bills, raised as a defense during his first trial, is the same as the issue of knowledge which the government must prove in the present case. It is entirely possible that the defendant had the requisite knowledge on one occasion and not on another, especially in light of the fact that the defendant presented evidence at his trial that he was extremely intoxicated.[7] *Cf. Douthit v. Estelle*, 540 F.2d 800 (5th Cir. 1970). (State was not collaterally estopped from trying defendant for assault with intent to commit rape in one county after his acquittal in jury trial of raping same woman in another county, the jury finding of consent in one alleged sexual assault not requiring a finding of consent in other alleged assaults.)

---

7. Record, at 10, 25, 57, 62, 72, and 74, (Testimony of Charles D. Griggs), *United States v. Griggs, supra*, note 5.

■ Moreover, even assuming *arguendo* that the issues of knowledge were in each case identical, the doctrine of collateral estoppel would nevertheless be inapplicable because the Court is of the opinion that the jury which acquitted the defendant could have grounded its verdict upon reasons other than his claimed lack of knowledge that the bills in question were counterfeit. *Ashe v. Swenson, supra*, 397 U.S. at 444, 90 S.Ct. at 1194. In this respect, the defendant's contention that the knowledge issue was his "primary defense" at his former trial is specious. A review of the record reveals that his defense was multifaceted. As noted previously, the defendant maintained throughout his trial that he was extremely intoxicated during the period when the alleged offenses were committed.[8] Additionally, the issue of identity was contested as to all three counts of the first indictment[9], and was the sole factor relied upon by the Court in directing a verdict as to Count III. Thus, the jury could have based its verdict of not guilty upon a finding that the defendant was too intoxicated to form the requisite intent to defraud, or upon a finding that he was not the man who passed the counterfeit bills.

■ Count V of the indictment remains for the Court's consideration. That count alleges that on April 20, 1979, the defendant attempted to pass and utter a counterfeit $50 bill to Barbara Rhodes at the Page One Lounge in Jacksonville, Florida. Although the defendant claims in his memorandum of law in support of the motion to dismiss that this count is identical to Count III of the first indictment, the record clearly indicates that it is not.[10] The successful pass alleged in Count III of the first indictment and the attempted pass alleged in Count V of the present indictment involve different counterfeit bills which were the subject of separate criminal acts.[11] Even though the incidents charged in both indictments occurred at the Page One Lounge, involved the same employee, and occurred at approximately the same time, these incidents were separate transactions. Therefore, the offense charged in the present indictment is not the same one previously charged. *See United States v. Stricklin*, 591 F.2d 1112 (5th Cir. 1979). In addition, neither the identity nor the intention of the man who attempted to pass the second $50 bill was considered by the Court in granting the directed verdict as to Count III in the prior case. The record indicates that the man who actually passed one counterfeit $50 bill and the man who attempted to pass another $50 bill may have been, in fact, different individuals.[12] Collateral estoppel does not apply since no issue necessary for the prosecution's case in the second trial has necessarily been found for the defendant in the first trial.[13] *See Douthit v. Estelle, supra*, at 803–04; *Johnson v. Estelle, supra*, at 350.

The Court reaches its decision as to Count V with some reluctance. The Court's reluctance derives not from concern over the application of collateral estoppel principles, the denial of the motion to dismiss being

8. *Id.*

9. *Id.* at 16, 17, and 21.

10. Count III of the first indictment alleged a successful pass of a counterfeit $50 bill, as opposed to only an attempted pass. The government introduced into evidence at the trial the bill that was actually passed. The government has advised the Court that it is not in possession of the bill which Griggs allegedly attempted to pass.

11. The record reflects this fact. Record, at 148–168, (Testimony of Barbara Rhodes); 169–177 (Testimony of James R. Johnson).

12. Record, at 148–168 (Testimony of Barbara Rhodes).

13. In maintaining that Count III of the first indictment is identical to Count V of the instant indictment, the defendant's challenge to Count V more closely resembles one based upon the traditional concept of double jeopardy (that a person cannot be tried twice for the same offense) than upon the doctrine of collateral estoppel. Because the Court has concluded that Count III and Count V allege different offenses, the Fifth Amendment's guarantee against double jeopardy is also inapplicable to the case at hand. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).

clearly required under the relevant law, but from concern that such a result may be unfair to a defendant. In some circumstances, a defendant may be intentionally harassed by multiple prosecutions. The defendant may also be placed at an unfair disadvantage as the government uses the experience of the first trial to strengthen its case in the second trial. *See Ashe v. Swenson,* 397 U.S. at 459, 90 S.Ct. at 1202 (Brennan, J., concurring) The Court is of the opinion that the better procedure would have been for the government to have charged the offense alleged in Count V in the first indictment. However, the Court is satisfied that, viewed in conjunction with the other offenses alleged in the instant indictment, the prosecution of Count V does not constitute an abuse of prosecutorial discretion.

For the foregoing reasons, the Court concludes that neither the doctrine of collateral estoppel as incorporated in the Fifth Amendment's guarantee against double jeopardy nor the traditional concept of double jeopardy itself forecloses the prosecution of the defendant on any of the charges included in the instant indictment. Accordingly, it is

ADJUDGED:

That the defendant's motion to dismiss the indictment is denied as to each and every count thereof.