**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Steve F. GIARRATANO,**
**Defendant-Appellant.**

No. 79–5595
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 23, 1980.

Rehearing Denied Sept. 15, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Daniel J. Markey, Jr., New Orleans, La., for defendant-appellant.

Veta Carney, Robert J. Boitmann, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Appellant Steve F. Giarratano was charged in a two-count indictment with mail fraud in violation of 18 U.S.C. §§ 1341 and 2.[1] The jury returned a verdict of guilty on Count I and acquitted on Count II. Giarratano moved for a judgment of acquittal on Count I, which was granted on the basis that the evidence concerning the mailing related to Count I was not sufficient to support a finding of guilt. During the mail fraud trial, Giarratano took the stand in his own defense. Subsequently, he was indicted for perjury in violation of 18 U.S.C. § 1623 based on a portion of his testimony in the mail fraud trial.[2] Giarra-

---

1. The indictment charged that Giarratano engaged in a scheme to defraud in that he deprived his employer, the Central Appraisal Bureau, Inc. and certain lending institutions of their right to his unbiased service in connection with two real estate appraisals. Count I charged that Giarratano accepted an unauthorized payment to influence him in the valuation of property located at 1036–1038 Esplanade Avenue in New Orleans, Louisiana. Count II charged that Giarratano caused another appraiser to accept an unauthorized payment with respect to the appraisal for property located at 2824 Ursulines Avenue in New Orleans, Louisiana.

2. The following statements, made by Giarratano at the mail fraud trial, were the subject of the perjury indictment:

(Direct Examination)
BY MR. BACH (Counsel for Defendant):
Q   Other than having received a gift of spirits, whiskey, liquor and I believe there was some other type of gift, you said some wine . . .
A   A basket of wine.
Q   A basket of wine.
A   The basket had, I think a few bottles in it.
Q   Have you ever received, other than your salary, any money, regardless of whether it was $1 or $100, or anything, have you

tano moved to dismiss the indictment based on claims of double jeopardy and collateral estoppel. The district judge denied the motion. The jury found Giarratano guilty as charged.

Giarratano argues that his conviction should be reversed for three reasons: (1) the doctrine of collateral estoppel barred his trial for perjury; (2) the false statements for which he was convicted were immaterial to the issues raised in the mail fraud trial; and (3) the district court erred in refusing to grant the motion for a mistrial. We find no merit in these contentions.

First, Giarratano contends that his prosecution for perjury was barred by the doctrine of collateral estoppel because an element essential to the perjury conviction— the unauthorized taking of money—was decided in his favor in the mail fraud trial. In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the doctrine of collateral estoppel applies to criminal cases as part of the constitutional protection against double jeopardy, and that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit," 397 U.S. at 443, 90 S.Ct. at 1194. In *Johnson v. Estelle*, 506 F.2d 347, 350 (5th Cir.), *cert. denied*, 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975), this court stated that application of

the doctrine of collateral estoppel "depends upon whether some issue necessary for the prosecution's case in the second trial has necessarily been found for the defendant in the first trial." Where, however, "a 'rational jury' could have based its decision in the first trial on the State's failure to establish essential elements not in controversy in the second trial . . ., then the double jeopardy criterion would, of course, not apply." *Id.*[3]

Giarratano's collateral estoppel argument is meritless because the issue necessary for the prosecution's case in the second trial—the taking of money to defraud—was not necessarily decided for the defendant in the first trial. Indictment for mail fraud under 18 U.S.C. § 1341 requires (1) a scheme to defraud (2) that involves a use of the mails (3) for the purpose of executing the scheme. *United States v. Kent*, 608 F.2d 542, 545 (5th Cir. 1979); *United States v. Knight*, 607 F.2d 1172, 1175 (5th Cir. 1979). Thus, three facts were crucial to the Government's case on each count of mail fraud. With respect to Count I, the jury, in returning a verdict of guilty, necessarily decided the "scheme to defraud" issue against Giarratano. In granting the motion for judgment of acquittal on Count I, the trial judge specifically found that the proof of a mailing was insufficient. Thus, acquittal was granted by the trial court on the basis of an essential element not in contro-

ever received any money from anybody in conjunction with an appraisal or your appraisal work for the CAB?
A *No, sir, I have not.*
(Cross-examination)
BY MR. BOITMANN (Counsel for the United States):
Q Did you ever receive any envelope from Mr. Hudson's office?
A Probably.
Q Did these envelopes contain any money, sir?
A *No, sir.*
Q What did they contain?
A Well, if I did receive an envelope it had a sales contract or something of that sort in it, or something pertaining to an appraisal.

3. In the case of an acquittal based on a general verdict, "the doctrine requires the court in a subsequent trial to examine the pleadings, evi-

dence, jury charge and other relevant material in the record of the first trial to determine 'whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *United States v. Gonzalez*, 548 F.2d 1185, 1191 (5th Cir. 1977), quoting *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194 (footnote and citations omitted). The task of the court reviewing the collateral estoppel claim is "to decipher exactly what facts have been or should be deemed to have been determined at the first trial." *U. S. v. Gonzalez*, 548 F.2d at 1191. In addition, we have consistently held that "when the fact is not *necessarily* determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue." *Adams v. United States*, 287 F.2d 701, 705 (5th Cir. 1961). *See also U. S. v. Gonzalez*, 548 F.2d at 1191.

versy in the second trial. With respect to Count II, the jury returned a general verdict of acquittal. It is impossible to know with certainty the jury's basis for the acquittal, but absent any specific evidence to indicate that the jury's verdict was based on the "scheme to defraud" element of mail fraud,[4] we conclude that the jury could have acquitted Giarratano because the Government failed to prove a mailing beyond a reasonable doubt. Thus, the issue of unauthorized payments to defraud was not necessarily decided in Giarratano's favor at the first trial.[5]

Second, Giarratano contends that one of the declarations which formed the basis of his perjury conviction was immaterial. On cross-examination by the Government in the mail fraud trial, Giarratano answered "no" when asked if the envelopes he received from Mr. Hudson's[6] office contained any money. Giarratano argues that since the original indictment concerned unauthorized payments with respect to appraisals conducted on only two properties and that Mr. Hudson was not connected in any way with either transaction, Giarratano's answer to the question concerning payments from Mr. Hudson was immaterial to the prosecution's case in the mail fraud trial.

■■■ The government has the burden of proving the materiality of the false declara-

tion. *United States v. Damato,* 554 F.2d 1371, 1373 (5th Cir. 1977). The test for materiality is a broad one—whether the false testimony was capable of influencing the tribunal on the issue before it. *United States v. Cosby,* 601 F.2d 754, 756 (5th Cir. 1979); *United States v. Cuesta,* 597 F.2d 903, 921 (5th Cir.), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979); *United States v. Damato,* 554 F.2d at 1372. Furthermore, we have held that "the statements need not be material to any *particular* issue but may be material to any proper matter of inquiry." *United States v. Abrams,* 568 F.2d 411, 420 (5th Cir.), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (emphasis in original). *See also United States v. Cosby,* 601 F.2d at 756. Under these cases, it is clear that the declaration at issue is not immaterial merely because it does not directly concern one of the two transactions alleged in the mail fraud indictment. The question concerning payments by Mr. Hudson was within the proper scope of cross-examination under Fed.R.Evid. 611(b) since Giarratano had testified on direct examination that he had never accepted any unauthorized payment for an appraisal. Giarratano's denial that he received money from Hudson was clearly capable of influencing the jury on its decision concerning the offenses alleged in the indictment.[7] Therefore, the trial judge

---

4. The burden is on the defendant to show that the judgment in the original trial necessarily decided a crucial issue in the second trial. *United States v. Gugliaro,* 501 F.2d 68, 70 (2d Cir. 1974). While *Ashe v. Swenson* and our prior cases require that a reviewing court make a pragmatic determination whether an issue concerning an essential element of the offense in the first trial remained a live issue such that the judgment might have turned on it, it is the duty of the appellant under Fed.R.App.P. 10(b) to provide this court with a transcript of the original trial if the appellant relies on the evidence or proceedings at that trial to support his argument on appeal. In this case, Giarratano has failed to provide us with a transcript of the original trial. The only items from that trial which have been made available to us are the indictment and Giarratano's testimony in his own behalf. We note that it appears to us from Giarratano's testimony that the sufficiency of the evidence of a mailing was a live issue at the original trial. Without a complete transcript and in the absence of a specific allega-

tion by Giarratano that the mailing issue could not have been a ground for decision in the first trial, we must conclude that Giarratano has failed to carry his burden of proof on the collateral estoppel issue.

5. Each case cited by Giarratano in support of his collateral estoppel argument is distinguishable on the basis that, because of the circumstances presented, the court or jury in the first trial *necessarily* determined in the defendant's favor an issue crucial to the prosecution's case in the second trial.

6. Mr. Hudson was a New Orleans real estate agent.

7. Giarratano argues that the declaration was immaterial because the jury was not influenced by it. We reject this contention. The test for materiality is not whether the statement influenced or misled the tribunal, but whether it was capable of so doing. *See United States v. Abrams,* 568 F.2d at 421.

properly ruled that the declaration was material.

Third, Giarratano argues that his conviction should be reversed because the district judge failed to grant a mistrial. During the perjury trial a juror, Mr. Trahant, notified the court that he had been a friend for several years of Mr. Dutreil, the husband of one of the Government witnesses. After questioning by counsel, Mr. Trahant was allowed to remain on the jury. However, later that same day an FBI agent was seen sitting with Mr. Dutreil. Because of this incident Mr. Trahant was excused and an alternate juror was seated. Defense counsel moved for a mistrial, which was denied.

 "The settled rule in this and other circuits is that 'the trial judge, in his *sound discretion*, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired.' " *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir. 1978), quoting *United States v. Smith*, 550 F.2d 277, 285 (5th Cir.), *cert. denied*, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977) (emphasis in original). The trial court's exercise of discretion in replacing a juror "is not to be disturbed absent a showing of bias or prejudice to the defendant." *United States v. Smith*, 550 F.2d at 285. In our view, the trial judge's action fell well within the range of discretion afforded trial judges in issues of juror replacement. Further, Giarratano's only allegation of prejudice is that the substitution of another juror for Mr. Trahant changed "the entire composition of the jury." In the absence of a much more specific allegation of prejudice we cannot disturb the district judge's determination. Giarratano's contention that the incident involving the FBI agent was a deliberate attempt to influence juror Trahant in the Government's favor is likewise an unsupported, conclusory allegation. The trial judge found that the incident involved no deliberate misconduct by the Government, and Giarratano has presented no evidence contrary to the trial judge's determination. Therefore, we conclude that the trial judge did not err in refusing to grant the mistrial.

The judgment of the trial court is AFFIRMED.