John S. MARTIN, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas State Department of Corrections, Respondent-Appellee.

No. 82–2155

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 18, 1982.

Rehearing and Rehearing En Banc Denied Nov. 17, 1982.

---

Robert E. Richardson, Jr., Sherman, Tex., for petitioner-appellant.

Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

This habeas appeal arises out of a state conviction for felony theft. The defendant, John Martin, claims that his conviction violates the collateral estoppel component of the guarantee against double jeopardy, *see Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Because we decide that a rational jury could have acquitted the defendant on grounds other than those necessary to support the second conviction, we affirm.

The events underlying this appeal occurred nearly ten years ago in the early morning hours of March 28, 1973. Charles Williams of the Van Alstyne, Texas, Police Department had stopped to question three men working by the side of Highway 75 on a suspiciously new looking semi-tractor. After asking them to line up and identify themselves, he took a driver's license from a man later identified as the defendant here. In the ensuing scuffle, Officer Williams was shot in the leg with his own gun and then beaten and left in a nearby ditch. The three suspects then fled, leaving the stolen semi-tractor behind. All three were later apprehended. John Martin was charged with the Texas felony of assault with intent to kill an officer of the peace. No lesser included offenses were charged.

The two principal issues at trial were Martin's identity and his intent to kill. The light provided by a nearby mercury vapor street lamp was so poor that Officer Williams apparently could not make a positive identification. The police department did not attempt to take fingerprints from the car, the truck, the gun, or the license. The prosecutor, to use language accepted by both the state and the defendant, then attempted to "pull a cute trick": after the defendant had demanded a line-up, the prosecutor took Officer Williams aside and showed him photographs so that all chance of misidentification could be eliminated. As a result, the prosecutor himself became the defense's star (and only) witness at trial. Officer Williams, who had testified on direct examination that his identification was based solely on his observations at the scene of the crime, was successfully impeached. There might have been, therefore, considerable doubt in the jury's mind about whether Martin was at the scene of the crime at all.

There was also some doubt about Martin's intent to kill. During the twenty minutes or so of fighting and beating, Martin had several opportunities to kill Officer Williams, but availed himself of none of them. Indeed, while he was apparently trying to make up his mind whether to shoot again, one of his accomplices shouted, "Don't kill him.... Shoot the tire from under that police car." Record at 355. Martin then shot at the tire and left with his two accomplices. After hearing all of this evidence, the jury returned a general verdict of not guilty.

■ Sixteen days after the first trial, Martin was again brought before the Texas trial court, this time for felony theft of the truck. In the interim, the prosecutor had made a deal with one of the accomplices, who then turned state's evidence and conclusively established that Martin had participated in the crime.[1] Martin received the maximum sentence allowable, ten years.

After a fruitless appeal to the Texas Court of Criminal Appeals, Martin sought a writ of habeas corpus in the Eastern District of Texas. *See* 28 U.S.C. § 2254 (1976 & Supp. IV 1980). The district court denied the application, but granted a certificate of probable cause for appeal to this court.

■ We agree with the parties that this case is governed by the collateral estoppel component of the double jeopardy guarantee as established in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The Supreme Court there held:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, [our] approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury *could* have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

397 U.S. at 444, 90 S.Ct. at 1194 (quoting Mayers & Yarbrough, Bis Vexari: *New Trials and Successive Prosecutions,* 74 Harv.L. Rev. 1, 38–39 (1960)) (emphasis added). Translated into the language of the present case, the rule requires us to determine whether a rational jury in the first trial *could* have acquitted Martin solely on the one contested issue not present in the second trial, i.e., on the ground that he did not intend to kill Officer Williams. Martin claims that the acquittal was based either wholly on the identification issue or on a combination of identification and intent. The State of Texas argues that the acquit-

tal was based (or *could* have been based) solely on the intent question. We agree with the State of Texas.

Although the most lengthy and artful defense examination and cross-examination at trial concerned the identification issue, we think that the record contains enough testimony to establish that a rational jury *could* have based its verdict of acquittal solely on the ground that Martin, though a participant in the theft and assault, simply did not intend at any time to kill Officer Williams. On at least three separate occasions—once during direct and twice during cross-examination—Williams' testimony indicated that Martin probably had not intended to kill him. Record at 355, 385, 387. During his closing argument to the jury, counsel for Martin stressed the weakness of the State's "intent" case five different times. Record at 414, 415, 419, 421, 423. We think that this is all that *Ashe* requires. *See e.g., United States v. Giarrantano,* 622 F.2d 153, 155 (5th Cir. 1980); *United States v. Gonzalez,* 548 F.2d 1185, 1191 (5th Cir. 1977); *Johnson v. Estelle,* 506 F.2d 347, 349–50 (5th Cir.), *cert. denied,* 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975).

Martin complains, however, that this interpretation of the law puts him in an impossible position. It in effect makes him choose between, on the one side, holding back the "intent" defense at the first trial and running a greater risk of conviction in order to establish a collateral estoppel defense for the "identification" issue in any later trial, and on the other side, presenting both his major defenses at the first trial, but only at the cost of losing the collateral estoppel defense for *both* issues in any subsequent proceeding. The net result, Martin concludes, is that a defendant can often fare better if his counsel at a first trial is incompetent and does not raise all of the available defenses. The skillful counsel is penalized. We can only reply that this criticism has been made before, *see e.g.,* Recent Development, 69 Mich.L.Rev. 762, 771–72

---

1. Officer Williams' testimony still remained indispensable at the trial for felony theft. Under Texas law, a case may not be sent to the jury on the uncorroborated testimony of an accomplice. *See* Tex.Code Crim.Pro.Ann. art. 38.14 (Vernon 1979).

(1971), and is directed at *Ashe,* not at the decision in this case. *Cf.* Schaefer, *Unresolved Issues in the Law of Double Jeopardy:* Waller *and* Ashe, 58 Calif.L.Rev. 391, 394 (1970) ("The defense of collateral estoppel will not often be available to a criminal defendant."). The decision below is therefore

AFFIRMED.