

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-2006

# USA v. Joseph

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1413

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Joseph" (2006). *2006 Decisions.* Paper 1204.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1204

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  05-1413

UNITED STATES OF AMERICA

v.

RONNIE JOSEPH

Appellant

Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal Action No. 03-cr-00106-1)
District Judge: Honorable Kent Jordan

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2006

Before: RENDELL and AMBRO, Circuit Judges,
SHAPIRO,[*] District Judge

(Opinion filed: April 28, 2006)

OPINION

AMBRO, Circuit Judge

---

[*]Honorable Norma L. Shapiro, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Ronnie Joseph appeals from the order and judgment of the United States District Court for the District of Delaware. Joseph was convicted of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), making a false statement to purchase a firearm in violation of 18 U.S.C. § 922(a)(6), and possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). She was sentenced to 61 months imprisonment, followed by 36 months of supervised release, and a $300 special assessment. Joseph alleges the District Court made three errors and, as a result, her conviction should be reversed. For the reasons set out below, we affirm the Court's judgment.[1]

## I.

As we write exclusively for the parties, we set out only those facts necessary to our analysis.[2] Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") went to Joseph's home to investigate her purchase of two firearms from a gun store in Delaware. During the course of the agents' investigative visit, (a) the agents discovered marijuana, glass vials and plastic baggies, (b) Joseph admitted she sold marijuana, (c) she stated she used to sell "dope" (which the questioning officer understood to mean heroin), and (d) the agents saw razor blades and scratches on a table

---

[1]We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291, as it is an appeal from a final decision of the District Court.

[2]We note that Joseph has not contended that there was anything unlawful about the agents' presence in her home, their questioning, or their discovery of the marijuana.

2

on which there was marijuana residue.

Prior to trial, Joseph moved *in limine* to exclude her "dope" statement and any testimony regarding the razor blades in connection with the sale of drugs other than marijuana. The Government argued that Joseph's statement and the razor blades were admissible for the purpose of proving her intent to distribute the marijuana. The District Court observed that, under Federal Rule of Evidence 404(b), prior bad acts can be used to prove intent[3] and stated that "the prejudicial impact of her admission in this regard does not substantially outweigh its probative value . . . . It's appropriate to have the admission come in." The Court did not explicitly discuss the motion *in limine* as to the razor blades, but stated that "[t]he motion is overruled" and testimony regarding the razor blades was subsequently introduced at trial.

During the trial, the prosecution made numerous references to "dope," "heroin," "PCP" [phencyclidine], "rock," "cocaine," "hydro" [a hydroponic weed with a higher Delta-9-Tetrahydrocannabinol (THC) level] and "crack." Some of those references were

---

[3]Pursuant to Federal Rule of Evidence 404(b)
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

3

connected to Joseph's admission that she had sold "dope" in the past (to repeat, a term the questioning officer understood to mean heroin). Other references stemmed from the conclusions of the prosecution's witnesses regarding the blades, vials, and baggies found in Joseph's residence.[4] Defense counsel objected when one witness testified that the packaging materials found at Joseph's home are "more to sell your crack cocaine and your cocaine as far as rock cocaine is crack." In response to the objection, the Court stated, "I permitted testimony about packaging materials, dope, *et cetera* with respect to admissions she had made and to go to intent, state of mind," and granted the objection "to the extent [the witness] is going to start talking about what else would go in those

---

[4]In her opening statement, the prosecutor told the jury that one witness would testify that "there is something more going on here than simply marijuana," and that the materials found at Joseph's home "are commonly used for packaging a certain[] type of marijuana – marijuana of a little higher quality, something called 'hydro,' and marijuana that is sometimes laced with something other than marijuana." During her direct examination of witnesses, the prosecutor elicited testimony that the razor blades, scratches and marijuana residue on the table were "indicative of a person packaging marijuana and other drugs;" "razor blades aren't used too often for marijuana;" "razor blades are used for your powders, your cocaine, your heroin;" the "baggies" found at Joseph's home are "more to sell your crack cocaine and your cocaine as far as rock cocaine is crack;" vials like the ones found at Joseph's home are often used for "'hydro,' which is a hydroponic weed . . . [with a ] higher THC level," or for marijuana "actually laced with PCP;" and that a pipe found at Joseph's house could be used for "smoking marijuana or smoking rock or anything." In her closing statement, the prosecutor said razor marks "could be consistent with distributing marijuana, packaging marijuana, but it's also used or more often used in connection with other drug dealing activities," and the vials found "are consistent with packaging certain types of marijuana, including 'Hydro,' a higher grade marijuana."

baggies."  The Court offered to give a curative instruction, but defense counsel declined.[5]

The Court addressed the issue of testimony regarding drugs other than marijuana a second time in a sidebar discussion following an unrelated objection by defense counsel. The Court stated, *sua sponte*, "we had another instance where [the witness] started talking about another drug."  It asked the prosecutor "to lead so that [the witness] stays in bounds."  Defense counsel then voiced her objection to the non-marijuana testimony and the Court stated to the prosecutor, "Here is the point.  Let's stay on marijuana, all right? That is what this case is about.  I want you to talk about the dope because there is evidence with respect to her behavior in that which I already ruled goes to intent to distribute, but I don't want us going off in other directions."

In closing argument, defense counsel contended, *inter alia*, that the possibility that Jamar Tate, Joseph's boyfriend, was the one who was selling the marijuana was enough to create reasonable doubt of Joseph's guilt.  In rebuttal summation, the Government prosecutor rhetorically asked the jury, "Who is Jamar Tate?  Where is he?  If he is not here, was he subpoenaed?  Was there any effort to get him here?  Where is he right now? And what exactly is his relationship? Does anybody know about this person?  Do any of us know?  . . . [I]f Jamar Tate was here we could ask him, but he is not here [,] so we just don't know."   The prosecution also argued that Tate was a "very convenient [scapegoat]

---

[5]The proposed curative instruction was: "The officer mentioned that it might be for crack cocaine.  This case isn't about crack cocaine and you shouldn't let that enter into your deliberations at all."  Defense counsel claims she declined the instruction for fear of drawing additional attention to the references to crack.

5

since he is not here."

Defense counsel objected to the prosecution's argument as unfairly shifting the burden to the defendant to present a witness and asked that the jury be specifically instructed that the prosecution's statements were improper and unfairly shifted the burden of proof. The Court overruled the objection to the extent that defense counsel was asking for a specific rebuke of the Government, but granted it to the extent that the objection focused on possible misleading of the jury. Because the Court found that the prosecution's closing came "real close to leaving the jury with the impression that the defense should have exercised subpoena power, brought in evidence," it added a curative instruction to the burden of proof instructions provided to the jury. Specially, the Court instructed the jury as follows:

> [A] defendant has no obligation to present any evidence at all, or to prove to you in any way . . . that she is innocent. It is up to the Government to prove that she is guilty and this burden stays on the Government from start to finish. It is up to the Government to prove this guilt and this burden stays on the Government from start to finish. Any implication to the contrary is inaccurate and should be disregarded.

The substance of this instruction was repeated at the request of defense counsel at the conclusion of the jury instructions.[6]

---

[6]The Court repeated the instruction to the jury as follows: "[T]he defendant has no obligation to present any evidence at all, or to prove to you in any way [that] she is innocent. It is up to the Government to prove that she is guilty and this burden stays on the Government from start to finish. The defendant has no obligation to present evidence or put on witnesses . . . . Any implication to the contrary is inaccurate and should be disregarded."

6

Defense counsel also requested a jury instruction that would advise the jury to consider whether Joseph's statements during the investigative visit were made knowingly and voluntarily and to consider, *inter alia*, her mental condition and whether the statements were made without fear or coercion. The Government argued, as the Court had already held a suppression hearing and determined that the statements should be admitted, that the requested instruction would invite the jury to overturn the Court's suppression ruling. The Court agreed, and did not give the instruction. It did instruct the jury, *inter alia*, instead that

> [y]ou should use your common sense in weighing the evidence. Consider it in light of your everyday experiences with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion. . . . It is your job to decide how much weight to give to the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one . . . . You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves. In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact . . . [;] the fact that a witness may be employed by a law enforcement agency does not mean that his or her testimony is necessarily deserving of more of less consideration or greater or lesser weight . . . . It is your decision . . . to give to that testimony whatever weight, if any, you find it deserves.

Joseph was subsequently convicted and sentenced, and she timely appealed.

**II.**

Joseph raises three questions for our consideration: (A) whether the District Court erred in denying her motion *in limine* to exclude evidence of the razor blades and

7

scratches and her statement that she used to sell "dope;" (B) whether the District Court abused its discretion in partially denying her objection and request for a particular curative instruction regarding the prosecutor's closing argument; and (C) whether the District Court abused its discretion in denying her request for a jury instruction regarding the voluntariness of her statements to law enforcement officers. We consider each of these issues in turn.

A.       *The motion in limine*

Joseph argues that the District Court abused its discretion in denying her motion *in limine* to exclude evidence of her possession of drug paraphernalia and her statement that she used to sell "dope." The Government contends that the evidence was properly admitted under Federal Rule of Evidence 404(b). We have a four-part test for admission of Rule 404(b) evidence: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

We need not consider whether the first three prongs of the four-part test for admission of Rule 404(b) evidence are satisfied, as it is uncontested that the fourth prong of the test was not met: the Court did not "charge the jury to consider the evidence only

8

for the limited purposes for which it is admitted."[7] *Id.* We assume without deciding that the failure to issue such an instruction, and thus the decision to admit the evidence, constituted clear or obvious error. Under the harmless error doctrine, however, a non-constitutional error will not warrant reversal unless "we cannot conclude that there is a reasonable possibility that the [error] prejudiced [the defendant's] trial in any meaningful way." *United States v. Toliver*, 330 F.3d 607, 617 (3d Cir. 2003). If, however, the error was constitutional, we must reverse the conviction unless the error was harmless "beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967).

Even assuming that the error here was constitutional, in light of the overwhelming evidence supporting Joseph's conviction, we conclude the error was harmless beyond a reasonable doubt. The ATF agents found marijuana in Joseph's home and she admitted it was hers; she conceded, in response to questioning, that she sold marijuana; and she professed guilt to making a false statement to purchase a firearm. *See United States v. Lore*, 430 F.3d 190, 209 (3d Cir. 2005) ("error was harmless beyond a reasonable doubt inasmuch as there was overwhelming evidence of [the defendant's] participation in the conspiracy"); *Affinito v. Hendricks*, 366 F.3d 252, 262 (3d Cir. 2004) ("Overwhelming evidence that a defendant acted with intent may also render an erroneous jury instruction harmless."); *United States v. Balter*, 91 F.3d 427, 440 (3d Cir. 1996) (errors "are

---

[7]The Court did offer an immediate curative instruction as to one of the non-marijuana drug references, but the Government concedes that the limiting instruction envisioned by *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003), was not provided.

harmless beyond a reasonable doubt where the evidence against the defendant is overwhelming") (internal quotation marks and citation omitted).

We conclude that the denial of Joseph's motion *in limine* does not constitute reversible error. That said, we are troubled by the repeated references to "crack," "rock," "cocaine," "PCP," and "hydro" made or elicited by the prosecution. "[T]he tremendous power a prosecutor may wield is accompanied by a special responsibility to exercise that power fairly." *Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005); *see also Berger v. United States*, 295 U.S. 78, 88 (1935) ("It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."); *United States v. Moore*, 375 F.3d 259, 263 (3d Cir. 2004) (prosecutor has "duty to comply with . . . rules of fundamental fairness"). In the context of this case, the Government's inclusion of multiple references to drugs other than marijuana, neither in evidence nor related to the charges, does not represent its best efforts to comply with this "special responsibility." *Hodge*, 426 F.3d at 376.

## B.     *The prosecutor's closing argument*

A District Court's "failure to sustain an objection to a prosecutor's closing argument is typically reviewed for abuse of discretion." *United States v. Moore*, 375 F.3d 259, 263 (3d Cir. 2004). Our Court has "outlined three factors to consider in determining whether improper comments are prejudicial: the scope of the comments within the context of the entire trial, the effect of any curative instructions given, and the

10

strength of the evidence against the defendant." *United States v. Gambone*, 314 F.3d 163, 179 (3d Cir. 2003). In "deciding whether a new trial is warranted because of improper remarks made by the prosecutor during closing arguments" we generally apply a harmless error analysis. *Id.* at 177. As stated above, if the error was constitutional, we must reverse the conviction unless the error was harmless "beyond a reasonable doubt." *Chapman*, 386 U.S. at 24.

Assuming once again that the error here was constitutional, considering the scope of the comments, the curative instruction, and the strength of the evidence against Joseph, we conclude it was harmless beyond a reasonable doubt.[8] First, the scope of the comments was minimal: the prosecutor made no reference to Tate in her approximately 33-page closing argument and discussed him in less than two pages of her seven-page rebuttal closing. Further, the particular comments to which defense counsel objected ("Where is [Tate]? If he is not here, was he subpoenaed? Was there any effort to get him here? Where is he right now?") made up only three lines of the prosecution's total closing argument. *See United States v. Zehrbach*, 47 F.3d 1252, 1267 (3d Cir. 1995) (holding error was harmless when, *inter alia*, that "comments at issue were but two sentences in a closing argument that filled forty pages of transcript").

_____

[8]We assume, without deciding, that the invited error doctrine does not apply here because we discern no fault with defense counsel's conduct. *See United States v. Molina-Guevara*, 96 F.3d 698, 705 (3d Cir. 1996) (invited error doctrine did not apply when defense counsel's "defense, and his summation in particular, can accurately be described as vigorous advocacy entirely appropriate for [the] case").

Second, the curative instructions provided by the Court were sufficient to cure any misdirection of the jury. We presume that "juries follow the instructions given by district courts." *United States v. Hakim*, 344 F.3d 324, 330 (3d Cir. 2003). Although a delay in the provision of a curative instruction can "overcome this presumption," the delay here was minimal. *Id.* The instruction was not offered immediately after the prosecutor's comments, but was provided as a part of the jury instructions approximately thirty minutes after the prosecutor concluded her rebuttal closing and at least ten of those minutes were taken up by a recess. The delay was therefore insufficient to rebut the presumption that the jury followed the Court's instruction that the "defendant has no obligation to present any evidence [and] . . . . [a]ny implication to the contrary is inaccurate and should be disregarded." *See, e.g., Hakim*, 344 F.3d at 330 (thirty minute delay, much of which was taken up by a recess, was "insufficient to overcome the presumption that the jury adhered to the dictates of the curative instruction"). Moreover, the curative instruction was clear and was repeated at the request of defense counsel. Finally, for the reasons stated above, the evidence against Joseph was overwhelming.

In this context, the prosecutor's error was harmless beyond a reasonable doubt. The District Court therefore did not abuse its discretion in resolving defense counsel's objection by issuing the curative instruction in the record.[9]

---

[9]In determining that the error was harmless in the light of the trial as a whole, we do not wish to condone the language in the prosecutor's rebuttal closing when, in the words of the District Court, "some of what the Government said got right close to the line, if not over it." Although a jury may need to be instructed that a defendant does not

## C.      *The jury instruction*

Joseph argues that the District Court abused its discretion in denying her request for a jury instruction regarding the voluntariness of her statement to law enforcement officers. She claims that her case "revolved around . . . the voluntariness and reliability" of her statements and thus an instruction directing the jury's consideration of those statements was essential. She relies primarily on the requirement for jury instructions found at 18 U.S.C. § 3501(a).[10] The Government responds that Joseph did not rely on or mention § 3501(a) in her argument in support of the confession instruction she proffered at trial, and thus our review is limited to determining whether plain error was committed.

Both parties, however, failed to note that 18 U.S.C. § 3501 was held unconstitutional in *Dickerson v. United States*, 530 U.S. 428, 442-43 (2000). Joseph's reliance on the statute is accordingly in vain. Furthermore, we are also unpersuaded by Joseph's more general argument (and the one she made before the District Court) that the requested instruction was necessary, as we conclude that the difference between the requested instruction and the instruction actually provided was not so great that we could

---

bear the burden of producing witnesses, the prosecution should require no such reminder. *See, e.g., United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996) (prosecution "may not improperly suggest that the defendant has the burden to produce evidence").

[10]18 U.S.C. § 3501(a) provided that
[i]f the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

13

say it affected the outcome of the District Court proceedings.  Therefore, even if the failure to issue the instruction was an error, it was harmless beyond a reasonable doubt.

For the foregoing reasons, we affirm the conviction and judgment of the District Court.