# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2008

Charles R. Fulbruge III
Clerk

No. 06-51100

———————

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

SIGIFREDO GUANESPEN-PORTILLO; GABRIEL QUINONES-MUELA;
ALEJANDRO HERNANDEZ-VASQUEZ; ARTURO QUINONES-MUELA;
ELIER QUINONES-MUELA

Defendants - Appellants

———————

Appeals from the United States District Court
for the Western District of Texas

———————

Before JOLLY, DAVIS, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The appellants are five of a group of seven individuals arrested near the border between the United States and Mexico outside Valentine, Texas. All five appellants were convicted of knowingly possessing, with intent to distribute, 100 kilograms or more, but less than 1,000 kilograms of marijuana and aiding and abetting each other. Sigifredo Guanespen-Portillo, Gabriel Quinones-Muela, Alejandro Hernandez-Vazquez, and Arturo Quinones-Muela appeal the sufficiency of the evidence against them. We find the evidence sufficient. The primary issue that draws our focus in this appeal, however, is raised by Elier

Quinones-Muela. He contends that his waiver of Miranda rights raised a question of voluntariness. Although he failed properly to object, he contends that 18 U.S.C. § 3501(a) required the district court, sua sponte, to hold a voluntariness hearing on his confession and sua sponte, to give an appropriate instruction to the jury. We examine § 3501(a) and the related precedents and find no reversible error.

We AFFIRM all convictions in this appeal.

I.

At trial, the government presented testimony that at about 10:00 p.m. on December 20, 2005, a walking sensor near Valentine, Texas was activated. When Border Patrol agents went to the area, they saw tracks, indicating that people were in the area. The agents positioned themselves to intercept the individuals, and an infrared night vision scope ("Loris") was set up on a hill nearby. Agent Joe Lewis operated the Loris. Images caused by body heat are visible on the Loris scope, but not faces or other identifying characteristics.

Around 2:00 a.m., Agent Lewis told other agents that he saw seven people bearing heavy loads on their backs, walking through the desert. When the seven arrived at the highway, they stopped and waited. Shortly, a vehicle pulled off the highway near the seven, who jumped up and loaded their backpacks into the vehicle. The vehicle drove away, and the seven persons returned toward the desert. Agent Lewis testified that he kept his eyes on the seven as they crossed the highway and the railroad tracks and lay down in the pasture. He guided other agents to that location, and those agents arrested the seven persons.

When the group was arrested, they were told by the agents to pick up their belongings, but no one picked anything up. They carried nothing but a jug of water and a roll of plastic bags. Agent Russell Church testified that people entering the country to look for work bring personal belongings with them, while drug traffickers have nothing with them but a small amount of food. None of the

appellants attempted to flee nor to avoid arrest. None of them had strap marks on their bodies from backpacking, but all of them were wearing thick jackets.

The vehicle was stopped and agents found that it contained seven army-style duffel bags, each containing 57 pounds of marijuana. The vehicle was driven by Elizabeth Gomez.

Jose Rangel-Rosales, one of the seven persons arrested, pleaded guilty and testified at trial for the government. He identified the five appellants as members of a group of seven who crossed from Mexico to the United States, each carrying a backpack of marijuana, but he did not know their names. He testified that they put the bags into a pickup with a closed cabin, and that they had been led by a guide, who left them 100-200 meters from where they loaded the vehicle. He said that he was to be paid $2,000.

Officer Raymond Rodriguez testified that each of the five appellants made statements to him following their arrest, and that each of them admitted that they carried backpacks to the road and either were present or helped to load the narcotics into the vehicle. He also testified that Hernandez-Vasquez stated that he carried marijuana and was to be paid $2,000. According to Officer Rodriguez, Gabriel and Elier Quinones-Muela, who are brothers, admitted that Gomez, the driver of the vehicle, is their cousin. Officer Rodriguez testified that he knew Spanish and spoke it his whole life, although he admitted that he had no special expertise in translation. He also admitted that he did not tape record the statements.

All of the appellants testified, through a translator, that they had entered the United States to find work, and they denied telling Officer Rodriguez that they carried marijuana or loaded it into a vehicle. They testified that there were eight people traveling together, including a guide. They said that they carried backpacks containing food and water, but that the guide told them to discard the backpacks before they got to the highway because they wouldn't need them any

longer. The appellants testified that the guide took them to the highway, told them to cross the highway and the railroad tracks, and wait for him to return with a vehicle to pick them up. Hernandez-Vasquez testified that Officer Rodriguez never asked if he had carried marijuana, but instead only asked if he had a backpack. He said he carried a backpack containing food, water, and supplies, and that he thought he was being arrested for illegal entry. The Quinones-Muela brothers testified that they came to the United States to look for work in Oklahoma, where they have relatives. Arturo and Elier denied telling Officer Rodriguez that Elizabeth Gomez, the driver of the vehicle into which the marijuana was loaded, was their cousin. Gabriel and Elier testified that they did not understand the Miranda warnings and could not understand Rodriguez's Spanish. Elier also testified that, when he signed a Miranda waiver, he was "very tired . . . cold and hungry" and did not pay attention.

The appellants were convicted of possession with intent to distribute marijuana and aiding and abetting possession with intent to distribute. Each appellant was sentenced to 60 months of imprisonment.

## II.

Guanespen-Portillo, Gabriel Quinones-Muela, Hernandez-Vasquez, and Arturo Quinones-Muela contend on appeal that the evidence was insufficient to support their convictions.

Elier Quinones-Muela contends that the district court erred by not holding a hearing to determine the voluntariness of his waiver of Miranda rights and his confession and by not instructing the jury regarding the voluntariness of his waiver and confession.

## III.

Guanespen-Portillo, Gabriel Quinones-Muela, Hernandez-Vasquez, and Arturo Quinones-Muela preserved their challenge to the sufficiency of the evidence by moving for judgments of acquittal. Therefore, the standard of

review that we apply is whether a rational jury could have found that the evidence established the essential elements of the crime beyond a reasonable doubt. United States v. Mitchell, 484 F.3d 762, 768 (5th Cir. 2007). We consider the evidence, all inferences drawn from it, and all credibility determinations in the light most favorable to the verdict. Id. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." Id. (internal quotation marks and citation omitted). "If the evidence tends to give nearly equal circumstantial support to either guilt or innocence then reversal is required." United States v. Gonzales, 436 F.3d 560, 571 (5th Cir. 2006).

To prove possession of marijuana with intent to distribute, the government must prove beyond a reasonable doubt: "(1) knowing (2) possession of marijuana (3) with intent distribute it." United States v. Ricardo, 472 F.3d 277, 283 (5th Cir. 2006) (quotation omitted). "Possession may be actual or constructive and may be proved by either direct or circumstantial evidence. Constructive possession is the knowing exercise of, or the knowing power or right to exercise dominion and control over the proscribed substance." United States v. Mata, 491 F.3d 237, 242 (5th Cir. 2007) (quotation omitted). Intent to distribute may be inferred from the large quantity of drugs involved. United States v. Cartwright, 6 F.3d 294, 299 (5th Cir. 1993).

To prove aiding and abetting of a criminal venture, the government must prove beyond a reasonable doubt that the defendants "(1) associated with the criminal enterprise; (2) participated in the venture; and (3) sought by [their] action to make the venture succeed." United States v. Valdez, 453 F.3d 252, 260 (5th Cir. 2006).

The appellants argue that the government failed to prove beyond a reasonable doubt that they were in possession of marijuana. They assert that

the evidence does not exclude the possibility that there was another group in the area at the same time of their arrest, because the area is frequently traveled by undocumented workers as well as drug traffickers. They argue that they had entered the United States to seek work and that the individuals that Agent Taylor observed and who loaded marijuana into the vehicle must have been another group. They also contend that the government did not prove its case sufficiently because it did not present evidence of a canine alert to the odor of marijuana on the defendants, fingerprint evidence, matching fibers, strap marks from carrying heavy backpacks or a recording of the defendants' statements to Officer Rodriguez.

Considering the evidence in the light most favorable to the verdict, we hold that a rational jury could have found that the appellants knowingly possessed marijuana and aided and abetted each other's possession. Agent Taylor's testimony indicates that he observed seven individuals load backpacks into a vehicle and run to the area where the appellants were later arrested. The appellants' co-defendant Rangel testified that he and the appellants were members of a group of seven who each carried a backpack of marijuana and loaded it into a vehicle. In addition, Officer Rodriguez testified that appellants each confessed to possessing a backpack full of marijuana. The four appellants challenging the sufficiency of the evidence do not challenge the introduction of their confessions, although they continue to deny that they confessed.

Although the appellants testified that they did not possess marijuana, criticized the lack of direct physical evidence, and offered an alternative theory to explain their arrest, the jury chose to believe the testimony of the government's witnesses and reasonably concluded that appellants had, beyond a reasonable doubt, loaded backpacks of marijuana into the vehicle. We therefore hold that the district court did not err in denying the appellants'

motions to acquit and that the evidence was sufficient to support their convictions.

## IV.

We now turn to the appeal of the fifth appellant, Elier Quinones-Muela ("Elier"). He contends that his conviction should be reversed because the district court erred by failing, sua sponte, to hold a hearing on the voluntariness of his Miranda waiver and confession, despite his failure to request one, and by failing, sua sponte, to instruct the jury on the voluntariness of his waiver and confession. We hold that the district court did not commit error, plain or otherwise in failing to hold a voluntariness hearing nor in failing to give a specific instruction regarding the voluntariness of Elier's confession.

### A.

Elier did not move before trial to suppress his confession; nor did he object to the introduction of his confession during trial; nor did he request at trial a hearing to determine the voluntariness of his Miranda waiver or confession. He contends, nevertheless, that the trial court had a duty to hold a hearing sua sponte, because the evidence clearly reflected a question of voluntariness.

### 1.

It has long been settled that a defendant has the right to challenge the admission of a confession on the grounds that it was obtained involuntarily. In Jackson v. Denno, the Supreme Court recognized that "[a] defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." 378 U.S. 368, 380 (1964). The court held that, when there is a factual issue about the voluntariness of a confession, the trial court must make a determination of voluntariness, including the resolution of any disputed facts. Id. at 390-91. The Court held that it is "practical and desirable" for such a determination to be made prior to the admission of the confession and

that the defendant was entitled to testify about the circumstances of the confession outside the presence of the jury. Id. at 395. The Court subsequently held in Miranda v. Arizona that certain warnings must be given before a suspect's statement made during custodial interrogation can be admitted. 384 U.S. 436 (1966).

Two years after the Court's decision in Miranda, Congress enacted 18 U.S.C. § 3501. Section 3501(a) provides:

> In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.[1]

Section 3501(b) lists five factors that the trial judge shall take into account in determining the issue of voluntariness of a confession.[2]

The constitutional right recognized in Jackson v. Denno is the "constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness." Jackson, 378 U.S. at 376-77. We have recognized that the right to such a hearing is subject to waiver by failure to properly challenge the

---

[1] As discussed below, the Supreme Court has held that § 3501(a) is unconstitutional to the extent that it conflicts with the rule announced in Miranda. Dickerson v. United States, 530 U.S. 428 (2000).

[2] Subsection (e) provides: "As used in this section, the term 'confession' means any confession of guilt of any criminal offense or self-incriminating statement made or given orally or in writing."

confession in the trial court. United States v. Gonzalez, 548 F.2d 1185, 1190 (5th Cir. 1977). The Supreme Court has also held, in applying the rule of Jackson v. Denno on habeas corpus review, that the "Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." Wainwright v. Sykes, 433 U.S. 72, 86 (1977). In the ordinary case, a defendant who fails to raise the issue of voluntariness has waived it. United States v. Renteria, 625 F.2d 1279, 1283 (5th Cir. 1980); see also United States v. Knezek, 964 F.2d 394, 397-98 (5th Cir. 1992) (holding that the district court did not abuse its discretion by finding that defendant had waived the opportunity for a suppression hearing on his confession by first moving to suppress the confession orally at the start of trial when no motion to suppress was filed, no hearing requested, and no objection to the admission of the statements was made).

We have, nevertheless, held that certain circumstances create a duty on the part of the trial court to hold a hearing on the voluntariness of a confession sua sponte. United States v. Iwegbu, 6 F.3d 272, 274 (5th Cir. 1993); Renteria, 625 F.2d at 1283.

Renteria is the first Fifth Circuit case to hold that the trial court must raise the issue of voluntariness on its own motion. 625 F.2d 1279 (5th Cir. 1980). The defendant, Joe Renteria, testified that, after his arrest and refusal to cooperate, the DEA agent who had been questioning him told him he would go to prison for life unless he talked and "that his mother was on her deathbed, that Renteria had ruined her life, and that if Renteria did not confess, his mother would be arrested for harboring him as a fugitive." Id. at 1282. The government contested this version of the facts, but Renteria's counsel did not request a hearing on or raise the issue of the voluntariness of his confession. Id. The court acknowledged that the issue of voluntariness is ordinarily waived if it is not raised. Id. at 1283. It held that "[t]he trial court, however, must raise

the issue on its own motion when the evidence clearly reflects a question of voluntariness." Id. (citing Gonzalez, 548 F.2d at 1190 (dictum); United States v. Powe, 591 F.2d 833 (D.C. Cir. 1978)). The court reasoned that "[i]nvoluntary confessions, about which the court is alerted, should not be admitted in evidence merely because of defense counsel's oversight or incompetence. Renteria's testimony pointedly raised the issue of voluntariness. It was plain error to fail to hold a Jackson v. Denno hearing." Id. (citation omitted). The court therefore remanded for a hearing to determine whether Renteria's confession was voluntary. Id.

Somewhat in tension with Renteria, the court later held in United States v. Espinoza-Seanez that the district court is not required to hold a Jackson v. Denno hearing when the issue of voluntariness is not properly before it and no objection is made to the introduction of a confession putting the trial court on notice that a hearing is being requested. 862 F.2d 526, 535 (5th Cir. 1988). In United States v. Berry the court also held that a general objection to the admission of a confession was insufficient to preserve the alleged error because it did not request a Jackson v. Denno hearing. 977 F.2d 915, 918 (5th Cir. 1992). The court further held that the omission of a voluntariness hearing may nevertheless be reviewed for plain error. Id.

In Iwegbu, the court again addressed the question of whether the trial court must hold a hearing on the voluntariness of a confession even if the defendant does not move for such a hearing or object at trial. 6 F.3d 272. There, the court for the first time expressly relied upon the text of § 3501(a) and held that the statute imposes a duty on the district court to hold a voluntariness hearing sua sponte when the evidence clearly raises a question of voluntariness. Id. at 273. The court reasoned that "[t]he statute is written in mandatory language, and therefore once an issue arises as to the voluntariness of a

10

confession, the district court should conduct a voluntariness hearing and give the instruction required by the statute." Id. at 274.

The Iwegbu court addressed the earlier precedent in Espinoza-Seanez, requiring a defendant to object to the introduction of his confession and request a hearing on its voluntariness. Espinoza-Seanez, 862 F.2d at 535. Espinoza-Seanez can be distinguished from Renteria because the defendant presented no evidence that his confession was involuntary. Id. at 536 ("The defendant's attorney . . . never presented any evidence which raised a question regarding the voluntariness of [defendant]'s confession. . . ."). Nevertheless, the Iwegbu court addressed the apparent conflict and stated that it would follow Renteria instead of Espinoza-Seanez for three reasons. First, Renteria is the earlier opinion, which the court is obliged to follow. Iwegbu, 6 F.3d at 274 n.1. Second, the Iwegbu court reasoned, the Supreme Court's opinion in United States v. Olano, 507 U.S. 725 (1993) holds that trial errors may be raised on appeal under FED. R. CRIM. P. 52(b) even if not brought to the attention of the district court, subject to review for plain error. Id. Finally, the court stated that "even if we were writing on a clean slate" the mandatory language of § 3501(a) requires that the court should conduct a voluntariness hearing on its own motion once an issue of voluntariness is clearly raised by the evidence. Id.

2.

The government, however, contends that, since our decision in Iwegbu, the Supreme Court in Dickerson v. United States, 530 U.S. 428 (2000), may have invalidated § 3501(a), including its requirement that the district court hold a hearing to decide any genuine issue of voluntariness.

In Dickerson, the Court reviewed a decision of the Fourth Circuit holding that the warnings required by Miranda were not based on constitutional principles and consequently Congress could statutorily override Miranda. The Fourth Circuit had held that, even though the defendant had not received

11

Miranda warnings, his confession was admissible because it was voluntary under the totality of the circumstances test required by § 3501(a). Id. at 432. Section 3501(a), the Fourth Circuit reasoned, designates voluntariness under the totality of the circumstances test as the touchstone of admissibility and eschews a warning requirement as the basis for admission. Id. Indeed, the Court agreed with the Fourth Circuit that Congress had intended, with the passage of § 3501(a) to overrule the Miranda warning requirement. Dickerson, 530 U.S. 428, 436.

Beyond this concession, however, the Supreme Court disagreed with the Fourth Circuit. The Court held that Miranda announced a constitutional rule requiring the exclusion of unwarned statements made during custodial interrogation. Id. at 432. The Court reasoned that, because Miranda was constitutionally based, Miranda's requirements could not be avoided by statutorily allowing the admission of unwarned statements. Id. at 444. The Court therefore held that § 3501(a) is unconstitutional to the extent that it negates the Court's decision in Miranda. Id.

It is arguable, therefore, that the Dickerson Court abrogated any requirement under § 3501(a) that the trial court hold a hearing on the voluntariness of a confession absent a proper motion by the defendant. The purpose of § 3501(a) was to replace the Miranda rule with a totality-of-the-circumstances voluntariness test. Because the statute requires a hearing as part of a scheme of determining the admissibility of confessions at trial, the Supreme Court's decision invalidating the statute's definition for admissibility arguably abrogated the statute's requirement that the trial court hold a hearing as well.

On the other hand, the Court did not suggest that it was overruling Jackson v. Denno, and indeed noted that the Miranda requirement "does not, of course, dispense with the voluntariness inquiry." Id. It noted, however, that "'[c]ases in which a defendant can make a colorable argument that a self-

incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare.'" Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984)).

We need not decide today the extent to which Dickerson abrogated § 3501(a).[3] The holding of Renteria requires the trial court to hold a hearing on the voluntariness of a confession sua sponte when the evidence clearly reflects an issue of voluntariness; and Renteria's requirement is not grounded in the text of § 3501(a). 625 F.2d at 1283. Instead, Renteria cites the persuasive authority of the District of Columbia Circuit's opinion in United States v. Powe. Id. In Powe, the D.C. Circuit held that trial courts have a duty to hold a hearing on the voluntariness of a confession when certain "alerting circumstances" are present. 591 F.2d at 842. In Powe, the interrogating officer testified that the defendant

---

[3] Other circuits have not squarely addressed the question of whether the hearing requirement of § 3501(a) was abrogated by the Supreme Court's decision in Dickerson, but they have continued to apply other portions of the statute. For example, the Second Circuit has applied the jury instruction requirement of § 3501(a) after Dickerson. United States v. Yousef, 327 F.3d 56, 131 (2d Cir. 2003) (finding the district court's jury charge to be consistent with the requirements of § 3501(a)). The Ninth Circuit has applied the voluntariness factors of § 3501(b) in determining whether a confession is admissible under the due process voluntariness test. United States v. Gamez, 301 F.3d 1138, 1144-45 (9th Cir. 2002) (finding statements made to the FBI by a foreign national to be voluntary).

The Third Circuit has, in an unpublished decision, interpreted Dickerson to invalidate all of § 3501(a), including the jury instruction requirement. United States v. Joseph, 178 F. App'x 162, 169 (3d Cir. 2006). The Supreme Court denied certiorari, but Justice Stevens noted that the government had conceded that the Third Circuit had erroneously interpreted Dickerson to invalidate more than the first sentence of § 3501(a), indicating that a confession will be admissible if it is voluntary, without requiring Miranda warnings. United States v. Joseph, 127 S.Ct. 1121 (2007). The Third Circuit has subsequently applied § 3501(a) and (b) in determining the scope of § 3501(c), which that court held makes an otherwise voluntary confession admissible, notwithstanding delay in bringing the defendant before a magistrate, so long as the confession was made within six hours of arrest. United States v. Corley, 500 F.3d 210, 218 (3d Cir. 2007). The court followed its precedent holding that the delay provisions of § 3501(c) are subject to the voluntariness test in § 3501(a) and (b). Id. at 219 n.6 (citing Gov't of the V.I. v. Gereau, 502 F.2d 914, 924 (3d Cir. 1974)). The court stated that the Supreme Court's opinion in Dickerson held that § 3501 was without effect "to the extent that it could be read as overruling Miranda." Id. at 210.

refused to talk after being advised of her rights and only confessed after the officer asked if she wanted to "cooperate and assist herself in this case and help herself out." Id. at 844-45. The court held that this undisputed testimony squarely raised the issue of voluntariness and should have alerted the trial judge to the possibility that the defendant's admissions were induced by direct or implied promises. Id. at 845. The court stopped short of holding that the Constitution requires a hearing on voluntariness to be held sua sponte. Id. at 847. It instead held that, "in supervising the administration of justice in federal courts, we, too, have an obligation to protect the rights of the accused and to preserve the orderly functioning of trial courts. . . . Thus, as an exercise of the federal courts' judicial authority to use their remedial mechanisms to redress or obviate . . . constitutional injuries, we remand to the district court for a hearing on the issue of the voluntariness of any of appellant's alleged statements." Id. at 847-48. (quotation omitted). The holding of Powe is therefore based not on a constitutional requirement or on the text of § 3501(a), but on the appellate courts' supervisory authority.

Our holding in Renteria is based on the persuasive authority of Powe, as well as our precedent in Gonzalez, which does not directly address whether a hearing may be required without a motion by the defendant. Renteria, 625 F.2d at 1283. Therefore, we need not decide the question whether the hearing requirement of § 3501(a) was abrogated by the Supreme Court's decision in Dickerson because we are bound by our precedent in Renteria.

In sum, when the evidence clearly reflects a question of the voluntariness of a confession, the trial court must raise the issue on its own motion. This rule is consistent with rules stated in other circuits. See N. Mar. I. v. Mendiola, 976 F.2d 475, 483-84 (9th Cir. 1992) (holding that a Jackson v. Denno hearing is required where there is evidence in the record tending to show involuntariness, despite defendant's failure to make a pre-trial motion to suppress or object on

voluntariness grounds), overruled on other grounds by George v. Camacho, 119 F.3d 1393 (9th Cir. 1997); United States v. Bentley, 726 F.2d 1124, 1128-29 (6th Cir. 1984) (holding that trial court committed plain error by not determining the voluntariness of the defendant's Miranda waiver when the evidence clearly reflected such an issue); Powe, 591 F.2d at 844 (D.C. Cir 1978); United States v. Taylor, 374 F.2d 753, 756 (7th Cir. 1967) ("Certain alerting circumstances . . . may, under due process standards, require a trial judge to investigate the necessity of conducting a hearing notwithstanding the absence of an objection.").[4]

### 3.

We now turn to the immediate case before us.

When, on appeal, a defendant asserts error by the district court for failing to hold a voluntariness hearing in the absence of a motion or objection, our review is for plain error.  Renteria, 625 F.2d at 1283.  Under the plain error standard, we will reverse only if (1) there is an error, (2) the error is clear under current law, and (3) the error affects the defendant's substantial rights.  Olano, 507 U.S. at 732-34; United States v. Garcia Abrego, 141 F.3d 142, 165 (5th Cir. 1998). When the three elements of plain error are present, relief is discretionary with the court of appeals and should be granted only when a plain error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Calverley, 37 F.3d 160, 164 (5th Cir. 1994) (en banc) (abrogated in part on other grounds by Johnson v. United States, 520 U.S. 461, 468 (1994)).

---

[4] Some circuits have held that there is no duty to hold a hearing on the voluntariness of a confession absent an objection by the defendant.  See United States v. Wilson, 895 F.2d 168, 172-73 (4th Cir. 1990) (finding no requirement for court to hold hearing under § 3501(a) without an objection, but noting that the evidence did not compel the conclusion that the confession was involuntary); United States v. Hart, 729 F.2d 662, 666 (10th Cir. 1984) (holding that the trial court need not hold a voluntariness hearing where the defendant did not object and no evidence presented raised the issue).   We are, of course, bound by our own precedent.

We start with the premise that plain error review first requires a finding (or at least an assumption) that an error has occurred. The trial court only commits error by admitting a confession without holding a voluntariness hearing on its own motion if "the evidence clearly reflects a question of voluntariness." Renteria, 625 F.2d 1283.

Elier does not contend that his purported confession was actually coerced, but instead that the evidence adduced at trial clearly reflected a question of the voluntariness of his waiver of his Miranda rights. A waiver of Miranda rights must be voluntarily made, and a hearing may be required to determine its voluntariness. See Turner v. United States, 387 F.2d 333, 334 (5th Cir. 1968) (holding that an objection on the basis of failure to give Miranda warnings rather than physical or mental coercion does not change the requirement that a Jackson v. Denno hearing be held outside the presence of the jury). The determination of whether a waiver is voluntarily made has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986). The Supreme Court has cautioned, however, that "[t]he sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion." Colorado v. Connelly, 479 U.S. 157, 170 (1986). Whether a waiver of the Fifth Amendment privilege is voluntary depends on "the absence of police overreaching, not on 'free choice' in any broader sense of the word." Id.

In this case, the Officer Rodriguez testified that Elier read the Miranda rights out loud, that Elier stated that he understood the warning, and that he

waived his rights. Officer Rodriguez testified that Elier stated he was carrying a backpack containing marijuana to the road where he then loaded his backpack into the vehicle. With this foundation, the government introduced into evidence a Miranda warning form, written in Spanish and signed by Elier. Elier's trial counsel objected to the admission of the waiver form on the grounds that the Government had not shown that Elier "knowingly and voluntarily waived his rights."

Elier testified that it was very cold the night that he was arrested and that he had not been given any food or rest between the time of his arrest and his questioning later that night. Elier testified that the officer who questioned him did not speak Spanish very well, and that he did not understand some of the words the officer used. Elier was asked whether the officer gave him "a piece of paper about [his] rights." Elier testified that the officer did show him a piece of paper. When asked what he thought he was signing on the paper, Elier testified: "I didn't pay attention. Really, I was very tired, I was cold and hungry." Elier testified that when the officer asked whether he had been carrying marijuana, he told him (contrary to Officer Rodriguez's testimony) that he did not have marijuana.

Although Elier testified that he did not pay attention to the waiver form he signed, he did not controvert Officer Rodriguez's testimony that he, Elier, had read the waiver aloud in Spanish and had stated that he understood it and was willing to waive his rights. Although he testified that he could not understand some of Officer Rodriguez's Spanish, Elier does not contend that the waiver form itself was misleading, nor does he deny that he read it aloud and understood it. Cf. Martinez v. Estelle, 612 F.2d 173, 180 (5th Cir. 1980) (finding that, if true, petitioner's allegations that he, an illiterate Mexican-American, was tricked into signing an inaccurate statement would require the conclusion that his confession was involuntary). Elier's testimony did not indicate that he was held without

17

food or rest for a long period of time or that his hunger and tiredness were in any part the fault of government agents. Cf., e.g., Greenwald v. Wisconsin, 390 U.S. 519 (1968) (confession held to be involuntary in part because defendant interrogated for over 18 hours without food or sleep).

At most, Elier's testimony raised questions about whether he paid attention to the written Miranda waiver at the time he signed it and whether he understood some of the words Officer Rodriguez used. In contrast with the clear evidence of coercive misconduct presented in Renteria, which "pointedly raised the issue of voluntariness," Elier's testimony does not suggest that his waiver was involuntary, especially given the uncontroverted testimony that he read the waiver form aloud and stated that he understood it. 625 F.2d at 1283. Moreover, Elier's testimony does not indicate coercive activity by law enforcement officers, which is a predicate for finding a waiver or confession to be involuntary. See Connelly, 479 U.S. at 170.

Furthermore, although Elier's trial counsel objected to the admission of the form Elier signed waving his Miranda rights, his objection did not put the court on notice that a hearing was required to determine the voluntariness of the confession. See Berry, 977 F.2d at 918. Certainly, the objection did not include a request for a hearing or direct the court's attention to facts that would suggest any question as to whether the waiver was in fact voluntarily made.

Finally, Elier's denial that he confessed at all further obscured any potential issue of voluntariness. It is not impossible for a defendant to claim both that he did not confess and that any confession he may be found to have made was involuntary. See United States v. Barry, 518 F.2d 342, 347 (2d Cir. 1975) ("A defendant may properly claim that he made no incriminating statements and that any statements which the jury might find that he made were coerced."). And, as the Supreme Court has held, a conviction resulting from the use of a coerced confession "is no less void because the accused testified at some point in

18

the proceeding that he had never in fact confessed." Lee v. Mississippi, 332 U.S. 742, 745 (1948). However, we have noted that there is "something inconsistent" about complaining about the lack of a hearing on the issue of Miranda warnings or voluntariness when the defendant denies that he confessed. Gonzalez, 548 F.2d at 1190. We also held in Iwegbu that the denial of a confession shifted the focus away from the issue of voluntariness, limiting any possible prejudice from the failure to give an instruction on voluntariness. 6 F.3d at 276. Although a confession may be found to be involuntary even though the defendant denies making it, Elier's denial served to shift focus away from the issue of voluntariness, and the other evidence was insufficient to clearly raise it.

In sum, the evidence as a whole did not clearly raise a question before the judge of the voluntariness of Elier's waiver or confession, and thus the trial court did not commit error by failing to hold a hearing sua sponte. Because we hold that the trial court did not commit error, we need not address the other prongs of this plain error inquiry.

B.

Elier also contends that § 3501(a) requires the district court to instruct the jury that they were "permitted to disregard his statements if he did not knowingly and voluntarily waive his Miranda rights." He concedes that, because he did not request such an instruction or object to the instructions given, our review is for plain error.

Assuming its validity after Dickerson, § 3501(a) provides that the "trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." As we have held above, the evidence does not clearly raise an issue of voluntariness. The district court therefore had no obligation to instruct the jury regarding the confession sua sponte. See Iwegbu, 6 F.3d at 274 (stating that the district court must comply with § 3501(a)

and give an instruction on voluntariness sua sponte when the evidence clearly raises a question of voluntariness). Consequently, the court did not commit error by failing to do so.

Moreover, assuming the district court had erred in failing to give a specific instruction regarding the confession as provided in § 3501(a), any such error would not constitute plain error because Elier has not shown that his substantial rights were prejudiced by the mere lack of this instruction. The district court gave the jury a standard instruction on the credibility of witnesses, instructing them to make judgments about the testimony of the witnesses, including the defendant. The court instructed the jury to decide "how important the testimony was." Although this instruction did not use the wording of § 3501(a), it did limit any prejudice arising from the lack of such an instruction. See Iwegbu, 6 F.3d at 276. In short, Elier has not shown that the outcome of his trial would have been different had the instruction required by § 3501(a) been given, and has not, therefore, shown that the omission of such an instruction constitutes plain error.

V.

For the foregoing reasons, the convictions of Sigifredo Guanespen-Portillo, Gabriel Quinones-Muela, Alejandro Hernandez-Vazquez, Arturo Quinones-Muela, and Elier Quinones-Muela are in all respects

AFFIRMED.