**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-40320

UNITED STATES OF AMERICA

                    Plaintiff - Appellee

v.

CAROL RIBAUDO; SONJA RITZ

                    Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas
(06-CR-276)

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

A jury found Carol Ribaudo and Sonja Ritz guilty of fifteen counts of mail fraud, wire fraud, and conspiracy for a scam that left victims high and dry. The defendants operated a travel agency. On this occasion, they sold cabins aboard a cruise ship that never sailed. They kept the deposits and enhanced their lifestyles. The district court sentenced Ribaudo to fifty-seven months in prison and Ritz to thirty-seven months in prison. Finding no reversible error, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Carol Ribaudo and her daughter, Sonja Ritz, worked as independent travel agents, operating under the name Elite Business Services. In 2001, Ribaudo met Lynn Newell, a potential client. Newell, in addition to her full-time job, was an independent distributor for Market America. Market America is a pyramid-style marketing company that operates, in part, through independent distributors. The distributors earn commissions by selling Market America's products and by recruiting other distributors.

In July 2003, Ribaudo emailed to Newell advertising that her travel services were available for the 2004 Market America Leadership Conference, a conference held in Miami every February. The conference typically draws thousands of distributors from all over the country. Ribaudo's ad offered cruise ship cabins as a fun and economic alternative to expensive Miami hotels. Participating distributors would arrive in Florida a few days early, cruise to Nassau, and then return to the Port of Miami where the cruise ship would serve as a floating hotel for the duration of the conference. The cabin price purported to include all meals, unlimited alcohol, and nightly entertainment. The ad requested prompt payment and encouraged the distributors to make their reservations immediately. Ribaudo asked Newell to forward the ad to her fellow distributors. Ribaudo also sent the ad to several other contacts and requested that they forward it to any other interested distributors.

In early September, Ritz set up several bank accounts under the name Elite Business Services in which to deposit the cruise payments. Ritz also applied for merchant accounts with American Express and Card Service International. The distributors began making their reservations, and Ribaudo and Ritz collected over $200,000.

Throughout this time, the defendants continued to send emails regarding the details of the trip. Among other services, they arranged cabin assignments,

suggested appropriate attire, and coordinated event schedules. To the distributors, it appeared as if the February cruise was completely on track.

Alas, on January 29, 2004, ten days before the cruise was scheduled to depart, Ribaudo notified the distributors that the cruise had been cancelled. She blamed the cancellation on a "massive amount of credit card declines and cancellations." She offered the self-deflecting advice that those who paid by credit card should seek a refund from their credit card company. Those who paid by check made repeated attempts to contact the defendants, but most of them heard not a word from Ribaudo or Ritz ever again.

The FBI initiated an investigation and soon learned that Ribaudo and Ritz had never made any significant effort to charter a cruise ship. The numerous emails regarding logistics were, it seemed, just a ruse. Bank records revealed that Ribaudo and Ritz spent nearly all the money they received on cars, real estate, and other personal items. When confronted, they both asserted, with what appears as incredulous chutzpah, that they were entitled to keep the money as a commission even though the cruise never occurred.

A grand jury was not persuaded and returned an indictment on November 8, 2006, charging Ribaudo and Ritz with conspiracy, wire fraud, and mail fraud. After the trial, the jury returned a guilty verdict. The district court then sentenced Ribaudo to fifty-seven months in prison and Ritz to thirty-seven months in prison.

## II.

On appeal, the defendants have raised the following issues: A) whether the district court should have *sua sponte* ordered a continuance after the filing of the superseding indictment; B) whether the district court erred by refusing to grant a continuance despite Ritz's impending wrist surgery; C) whether the district court erred by excluding the suicide notes of Scott Willard, Ribaudo's fiancé; D) whether the government presented evidence sufficient to find Ritz

guilty of wire fraud and mail fraud; and E) whether Ribaudo should have received a two-level sentence enhancement for her role as the leader and organizer of the scheme.[1] We consider each of these issues in turn.

A.

The grand jury issued the superseding indictment only five days before Ribaudo and Ritz's trial was scheduled to begin. The defendants did not ask for a continuance at the time, but they now argue that the district court should have *sua sponte* ordered a continuance.

The district court has discretion "to grant a continuance for trial preparation if it determines that the ends of justice so require." *United States v. Jackson*, 50 F.3d 1335, 1339 (5th Cir. 1995). And in *United States v. Rojas-Contreras*, the Supreme Court held that the filing of a superseding indictment does not automatically warrant a continuance. 474 U.S. 231, 236 (1985).

Because the defendants failed to ask for a continuance in the district court, we review only for plain error. FED. R. CRIM. P. 52(b). The changes made in the

---

[1] The defendants raised two additional issues on appeal, but we consider them abandoned because they are not adequately briefed. *See United States v. Lindell*, 881 F.2d 1313, 1325 (5th Cir. 1989).

The defendants challenge the district court's decision to allow testimony regarding their failure to file tax returns in 2003 and 2004. Concluding that the testimony was probative of Ribaudo and Ritz's knowledge of the fraud, the district court permitted the testimony pursuant to Federal Rule of Evidence 404(b). The defendants, however, fail to address the section of Rule 404(b) which permits the admission of evidence of other crimes to prove knowledge.

The defendants also challenge the court's application of a two-level sentencing enhancement for abuse of a position of trust. *See* U.S.S.G. § 3B1.3. At the sentencing hearing, the district court explicitly stated that it was applying § 3B1.3 pursuant to Application Note 2(B), which states that the § 3B1.3 sentencing adjustment shall apply to a "defendant who exceeds or abuses the authority of his or her position in order to obtain unlawfully, or use without authority, any means of identification." *Id.*, comment., n.2. If Application Note 2(B) is satisfied, the sentencing adjustment applies notwithstanding "any other provision of this guideline." *Id.* The defendants, however, fail to discuss Application Note 2(B) in their briefs.

superseding indictment were not so significant as to justify a grant of delay.[2] Accordingly, the district court did not commit plain error by not *sua sponte* ordering a continuance.

## B.

On July 18, 2007, approximately a month before the trial was set to begin, Ritz notified the district court that she was scheduled to have wrist surgery on August 7, and she requested a continuance. The district court denied her request, and Ritz now contends that this denial was an abuse of discretion.

"This court will reverse a district court's decision denying a defendant's motion for continuance only when the district court has abused its discretion and the defendant can establish that he suffered serious prejudice." *United States v. Castro*, 15 F.3d 417, 423 (5th Cir. 1994).

The district court denied the motion for several reasons. First, Ritz could have made this conflict known at an earlier time. Second, Ritz failed to provide an explanation for why her surgery could not take place at an earlier date. Third, the government had already arranged travel for all of its witnesses. These reasons are sufficient to demonstrate that the district court did not abuse its discretion.

## C.

Defendants also appeal the district court's decision to exclude evidence related to the suicide of Scott Willard. This court reviews a district court's decision to admit or exclude evidence for an abuse of discretion. *United States v. Guidry*, 456 F.3d 493, 501 (5th Cir. 2006). An error in excluding evidence does

---

[2] The superseding indictment made the following changes: 1) "Elite Travel" was changed to "Elite Business Services"; 2) the dates of the offenses and the date the conspiracy began were slightly adjusted; 3) the points of origin for several of the transactions were changed; 4) several of the transaction dates were slightly changed; 5) an allegation was added regarding Ritz's control over a Wachovia bank account; and 6) the criminal forfeiture increased from $172,844 to $205,736.

not necessitate reversal unless the error affected the defendants' substantial rights. *United States v. Kay*, 513 F.3d 432, 455 (5th Cir. 2007).

Willard was Ribaudo's fiancé, and, according to Ribaudo, he managed the finances of Elite Business Services. Shortly after Ribaudo cancelled the cruise, she discovered Willard lying dead in their bath tub. At trial, the defendants sought to admit two suicide notes purportedly emailed from Willard to Ribaudo. They argued that the notes suggested that Willard was responsible for the cruise ship fraud. The notes do suggest that Willard was upset and wanted to die, but beyond a vague reference to being a "con," the cruise scheme is not mentioned at all. The notes are, at best, tangentially relevant to the issues at trial, and nothing argued by the appellants convinces us that their omission constituted an abuse of discretion by the district court.

## D.

Ritz challenges the sufficiency of the evidence used to convict her for mail fraud and wire fraud. Because she moved for acquittal in the district court, we ask whether a "rational jury could have found that the evidence established the essential elements of the crime beyond a reasonable doubt." *United States v. Guanespen-Portillo*, 514 F.3d 393, 396 (5th Cir. 2008). "We consider the evidence, all inferences drawn from it, and all credibility determinations in the light most favorable to the verdict." *Id.*

To prove mail fraud, the government must demonstrate (1) a scheme to defraud; (2) use of the mails to execute the scheme; and (3) specific intent to defraud. *United States v. Arledge*, 553 F.3d 881, 890 (5th Cir. 2008). To prove wire fraud, the government must demonstrate (1) a scheme to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) specific intent to defraud. *United States v. Mann*, 493 F.3d 484, 493 (5th Cir. 2007). Moreover, a person who aids and abets a federal crime is punishable as a principal. *See* 18 U.S.C. § 2. To prove aiding and abetting, the government must

demonstrate that the defendant "(1) associated with the criminal enterprise; (2) participated in the venture; and (3) sought by [her] action to make the venture succeed." *Guanespen-Portillo*, 514 F.3d at 397.

Ritz argues that there was only minimal evidence that she took part in the actual wire transfers. The government, however, did not need to prove that Ritz performed each act alleged in the indictment. *United States v. Rivera*, 295 F.3d 461, 466 (5th Cir. 2002). Indeed, the government submitted ample evidence from which the jury could conclude that Ritz aided and abetted the scheme. Several of the emails sent to the distributors were from Ritz's account. The bank account applications and merchant account applications all bore Ritz's signature. Ribaudo testified that Ritz was involved in the scheme. Agents with the Federal Bureau of Investigation testified that Ritz told them that she was the owner of Elite Business Services. And the day before Ribaudo sent the cancellation email, Ritz withdrew all remaining balances from their bank accounts. Accordingly, we find the evidence sufficient to sustain Ritz's conviction.

E.

Ribaudo appeals the district court's application of a two-level sentence enhancement, pursuant to § 3B1.1(c) of the United States Sentencing Guidelines, for her role as the leader and organizer of the scheme. In considering possible sentencing errors, we review factual findings for clear error and interpretations of the Sentencing Guidelines *de novo*. *United States v. Mauskar*, 557 F.3d 219, 232 (5th Cir. 2009).

Ribaudo argues that she and Ritz were equally responsible for the scheme. There was substantial evidence, however, to support the district court's conclusion that Ribaudo was the leader and organizer. Ribaudo had been a travel agent for over three decades; Ritz had only been one for five years. Newell testified that Ribaudo formulated the cruise idea, and the initial emails were sent by Ribaudo. Ribaudo even testified that Ritz always obeyed her

instructions. The district court, therefore, did not err in concluding that Ribaudo was the leader and organizer.

## III.

Because we find no reversible error, Ribaudo and Ritz's convictions and sentences are

AFFIRMED.